631 S.E.2d 614

**The HARDWOOD GROUP d/b/a Plywood and Plastics of Roanoke, Plaintiff Below, Appellee,**

v.

**Claire V. LaROCCO, Defendant Below, Appellant.**

**No. 32781.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2006.

Decided Feb. 17, 2006.

Concurring Opinion of Justice ALBRIGHT May 11, 2006.

James W. Lane, Jr., Charleston, for the Appellant, Claire V. LaRocco.

Josef A. Horter, Hendrickson & Long, P.L.L.C., Charleston, for the Appellee, The Hardwood Group.

DAVIS, Chief Justice:

The appellant herein and defendant below, Claire V. LaRocco (hereinafter referred to as "Ms. LaRocco"), appeals from an order entered December 9, 2004, by the Circuit Court

of Greenbrier County. The circuit court had previously entered a judgment by default against Ms. LaRocco in favor of the appellee herein and plaintiff below, The Hardwood Group (hereinafter referred to as "Hardwood"). Ms. LaRocco then filed a Rule 60(b) motion to set aside the default judgment for excusable neglect. By the terms of the December 9, 2004, order, the circuit court found no good cause existed for Ms. LaRocco's failure to act in a timely manner, and denied the motion to set aside the default judgment. Based upon the parties' briefs,[1] the record designated for our consideration, and the pertinent authorities, we affirm the rulings of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The case before us follows the circuit court's denial of Ms. LaRocco's motion to set aside a default judgment. The record reveals that Ms. LaRocco was the president of a company, Greenbrier Architectural Woodworks, and signed a promissory note with Hardwood guaranteeing repayment of a specific sum of money. In exchange for the execution of the promissory note, Hardwood was able to extend credit to Ms. LaRocco so her company could continue running its business.

Hardwood filed a complaint against Ms. LaRocco on September 19, 2003, alleging that Ms. LaRocco had defaulted on her personal guarantee of a debt. Ms. LaRocco signed the restricted delivery notice on Octo-

ber 1, 2003, evidencing receipt of the summons and complaint.[2] On December 3, 2003, Hardwood moved for default judgment pursuant to Rule 55 of the West Virginia Rules of Civil Procedure based on Ms. LaRocco's failure to file an answer or other responsive pleading to the complaint. A copy of the letter requesting a ruling of default, the motion, and an accompanying affidavit were sent to Ms. LaRocco. The circuit court entered an order granting default judgment[3] on December 9, 2003, with a copy of the order forwarded to Ms. LaRocco. Hardwood then sought execution of the judgment.

Thereafter, on February 3, 2004, Ms. LaRocco filed a motion to set aside the default judgment and to quash the suggestion of execution. Ms. LaRocco argued that her failure to respond was justified based on excusable neglect, and further, that meritorious defenses existed to the default action commenced by Hardwood. A hearing was held on May 17, 2004, wherein the trial court requested briefs regarding meritorious defenses. Subsequently, the trial court entered an order on December 9, 2004, and found that Ms. LaRocco had not shown good cause for her failure to respond to the complaint in a timely manner, and therefore, denied her motion to aside the default judgment. It is from this ruling that Ms. LaRocco now appeals.

## II.

### STANDARD OF REVIEW

This case is before this Court on appeal from the circuit court's order denying

---

1. The parties did not present their case at oral argument, and instead, submitted their case on written briefs.

2. Ms. LaRocco first alleged that she was away on a business trip during this time and could not possibly have signed the delivery notice. However, upon further investigation, it was learned that she was in town during this time, and it was conceded that the signature reflected her own; therefore, this argument was retracted.

3. The motion for default judgment was made pursuant to Rule 55(b)(1) of the West Virginia Rules of Civil Procedure for a sum certain based on the terms of the signed promissory note. Because the default judgment was entered on a sum certain, no hearing on damages was required. *See* Syl. pt. 3, *Farm Family Mut. Ins. Co. v. Thorn Lumber Co.*, 202 W.Va. 69, 501 S.E.2d 786

(1998) ("The term 'sum certain' under *West Virginia Rules of Civil Procedure* Rule 55(b)(1) [1959] contemplates a situation where the amount due cannot be reasonably disputed, is settled with respect to amount, ascertained and agreed upon by the parties, or fixed by operation of law. A claim is not for a 'sum certain' merely because the claim is stated as a specific dollar amount in a complaint, verified complaint, or affidavit."). *See also* Syl. pt. 3, *Cales v. Wills*, 212 W.Va. 232, 569 S.E.2d 479 (2002) ("Generally, under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve a sum certain or a sum which can by computation be made certain, a judgement by default may be entered against a party who has defaulted as to liability without prior notice to that party.").

Ms. LaRocco's motion to set aside a default judgment under Rule 60(b) of the West Virginia Rules of Civil Procedure. The standard of review is well-settled, and we have previously held that " '[a] motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of discretion.' Syl. Pt. 3, *Intercity Realty Co. v. Gibson*, 154 W.Va. 369, 175 S.E.2d 452 (1970) [*overruled on other grounds by Cales v. Wills*, 212 W.Va. 232, 569 S.E.2d 479 (2002)]." Syl. pt. 6, *Games–Neely ex rel. West Virginia State Police v. Real Prop.*, 211 W.Va. 236, 565 S.E.2d 358 (2002). We have further explained that " '[a]ppellate review of the propriety of a default judgment focuses on the issue of whether the trial court abused its discretion in entering the default judgment.' Syllabus point 3, *Hinerman v. Levin*, 172 W.Va. 777, 310 S.E.2d 843 (1983)." Syl. pt. 1, *Cales v. Wills*, 212 W.Va. 232, 569 S.E.2d 479 (2002). Further guidance is obtained from our previous holding that "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). Mindful of these applicable standards, we now consider the substantive issues herein raised.

## III.

### DISCUSSION

On appeal to this Court, Ms. LaRocco assigns error to the circuit court's failure to set aside the default judgment. In so doing, Ms. LaRocco challenges the circuit court's conclusion that no good cause was shown for her failure to timely respond to the summons and complaint. Before this Court, Ms. LaRocco avers that the circuit court used the incorrect standard in denying the Rule 60(b) motion to set aside the default judgment because she alleges that she is not required to meet a

"good cause" standard. Further, Ms. LaRocco contends that under the factors set forth by this Court in *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979), the trial court abused its discretion in declining to set aside the default judgment. Hardwood argues that the trial court was proper in its granting of the default judgment, and was further correct in denying the motion to set aside the default judgment. We will first look to the language of the applicable rules to determine the correct standard to apply when considering a motion to set aside a default judgment.

Ms. LaRocco first argues that the default judgment entered against her should be set aside for "excusable neglect" pursuant to Rule 60(b), and that there is no requirement that she meet a separate threshold of "good cause" before she can prevail in her motion to set aside. While we previously have articulated a difference between the issuance of a default as opposed to a default judgment, we have yet to make a distinction between the standard for setting aside a default and that for setting aside a default judgment. *See* Syl. pt. 2, *Cales*, 212 W.Va. 232, 569 S.E.2d 479 ("A default relates to the issue of liability and a default judgment occurs after damages have been ascertained."). The present case deals with a default judgment[4] and the appropriate standard to be applied in setting aside a default judgment; however, to properly understand the applicable standards, we are compelled to discuss and clarify the standard for setting aside both a default and a default judgment.

### A. Standard for Setting Aside Defaults and Default Judgments

To determine the proper standard for setting aside defaults and default judgments, we turn first to the applicable rule. Rule 55(c) of the West Virginia Rules of Civil Procedure directs that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."[5] Thus, at first glance, it ap-

---

4. See note 3, *supra*, for the relevant facts regarding the default judgment.

5. The pertinent portion of Rule 60 provides:

pears that two different standards have been created under Rule 55(c): one of good cause to set aside an entry of default, and one following Rule 60(b) to set aside an entry of default judgment. We will examine each standard more closely below.

■ **1. Default standard.** Rule 55(c) clearly states that "[f]or good cause shown the court may set aside an entry of default[.]" Notably, Rule 55(c) of the West Virginia Rules of Civil Procedure, which is modeled after Federal Rule 55(c),[6] does not provide a definition of the term "good cause." It has been explained that:

> A default may be set aside for good cause under Rule 55(c). However, Rule 55(c) does not define good cause. As a result of a lack of definition for good cause, federal courts have imposed upon Rule 55(c) the factors that they use for reviewing a default judgment under Rule 60(b)....
>
> (b) *Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure

The factors considered by federal courts under Rule 60(b), which they apply to Rule 55(c), are essentially the same factors adopted by the [West Virginia] Supreme Court for circuit courts to consider in reviewing a default judgment under our Rule 60(b)....

Franklin D. Cleckley, Robin J. Davis, Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 55(c), at 143–44 (Cum. Supp. 2005) (internal footnotes omitted). As the foregoing commentators have observed, to overcome the lack of a definition for the phrase "good cause," federal courts have instructed "when considering a motion to set aside a default entry, the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b)[.]" *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). *Cf. In the Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir.1992) ("Whatever fac-

for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

6. Because the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, we often refer to interpretations of the Federal Rules when discussing our own rules. *See Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) ("Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases ... in determining the meaning and scope of our rules." (citations omitted)). *See, e.g., State v. Sutphin*, 195 W.Va. 551, 563, 466 S.E.2d 402, 414 (1995) ("The West Virginia Rules of Evidence are patterned upon the Federal Rules of Evidence, ... and we have repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." (citations omitted)). *Accord Keplinger v. Virginia Elec. & Power Co.*, 208 W.Va. 11, 20 n. 13, 537 S.E.2d 632, 641 n. 13 (2000). We note, however, that " '[a] federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persuasive, but it is not binding or controlling.' Syllabus point 3, *Brooks v. Isinghood*, 213 W.Va. 675, 584 S.E.2d 531 (2003)." Syl. pt. 3, *In re West Virginia Rezulin Litigation*, 214 W.Va. 52, 585 S.E.2d 52 (2003). Accordingly, we find it relevant to consider how federal courts apply their rule in construing our own rule.

**62**

tors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default."). Moreover, this Court has historically applied the standards of Rule 60(b) to motions to set aside a default.[7] *See Coury v. Tsapis,* 172 W.Va. 103, 304 S.E.2d 7 (1983). *Accord Parsons v. McCoy,* 157 W.Va. 183, 202 S.E.2d 632 (1973); *Hamilton Watch Co. v. Atlas Container, Inc.,* 156 W.Va. 52, 190 S.E.2d 779 (1972); *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970), *overruled on other grounds by Cales v. Wills,* 212 W.Va. 232, 569 S.E.2d 479 (2002).

 Following the guidance of the federal courts and our own prior cases, when addressing a motion to set aside a default we look to the factors that have been instituted for challenging a default judgment under Rule 60(b) to establish the factors required to fulfill the "good cause" element of Rule 55(c). In West Virginia, we have explained that "[i]n determining whether a default judgment should be ... vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party." Syl. pt. 3, in part, *Parsons v. Consolidated Gas Supply Corp.,* 163 W.Va. 464, 256 S.E.2d 758 (1979). Moreover, as has been articulated by Justice Cleckley, "[w]hen the issue is one of whether to set aside an entry of default so that the 'good cause' standard of Rule 55(c) is applicable, it is not absolutely necessary that the neglect or oversight offered as reason for the delay in filing a responsive pleading be excusable." Cleckley, Davis, & Palmer, *Litigation Handbook* § 55(c), at 144 (Cum. Supp. 2005) (internal footnotes omitted). Thus, while a factor under Rule 60(b) can be a consideration, it is

not a required finding prior to setting aside an entry of default. To afford more guidance, a trial court may consider "the reason for the defaulting party's failure to timely file an answer." *Id.* (citing *O.J. Distrib. v. Hornell Brewing Co.,* 340 F.3d 345 (6th Cir.2003) ("[I]f service of process [on the defendant] was not proper, the court must set aside an entry of default.")).

 Therefore, we now expressly hold that when addressing a motion to set aside an entry of default, a trial court must determine whether "good cause" under Rule 55(c) of the West Virginia Rules of Civil Procedure has been met. In analyzing "good cause" for purposes of motions to set aside a default, the trial court should consider: (1) the degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; (4) the degree of intransigence on the part of the defaulting party; and (5) the reason for the defaulting party's failure to timely file an answer.

Notwithstanding the similarities in the standard used in deciding whether to set aside a default and a default judgment, we recognize that due to the differences in the finality of the judgments,[8] the standard is applied more leniently in the case of a default. As Justice Cleckley has explained,

[a]lthough "the same considerations exist when deciding whether to set aside either an entry of default or a default judgment, ... they are to be applied more liberally when reviewing an entry of default." In other words, "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, because the concepts of finality and litigation repose are more deeply implicated in the latter action."

7. Further, we should point out that, while all of our prior cases have focused upon the excusable neglect factor listed in Rule 60(b), there are other factors under the rule that may justify relief.

8. The entry of a default is an interlocutory order and is not a final appealable order. *See Coury v. Tsapis,* 172 W.Va. 103, 106, 304 S.E.2d 7, 10

(1983) ("The federal rule's distinction between a default and a default judgment has resulted in a recognition that a default order is interlocutory. In reality, it represents a default on liability and, until the amount of damages is ascertained, there is no final judgment.").

Cleckley, Davis, & Palmer, *Litigation Handbook* § 55(c), at 143–44 (Cum. Supp. 2005) (internal footnotes omitted). Now that we have clarified the standard for setting aside a default, we examine the standard applicable to the present case for setting aside a default judgment.

 **2. Default Judgment Standard.** In the present case, Ms. LaRocco argues that she was improperly required to meet two standards: good cause and excusable neglect.[9] Rule 55(c) states that "if a judgment by default has been entered, [the court] may likewise set it aside in accordance with Rule 60(b)." This language parallels a pre-1998 version of the rule.[10] Our prior cases interpreting this language found it to mean that "a motion to set aside such judgment will not be granted unless the movant shows good cause therefor as prescribed in Rule 60(b)[.]" *Jackson Gen. Hosp. v. Davis,* 195 W.Va. 74, 76, 464 S.E.2d 593, 595 (1995) (citing *Blair v. Ford Motor Credit Co.,* 193 W.Va. 250, 455 S.E.2d 809 (1995)). As we explained in the preceding section of this opinion, and now expressly hold, in addressing a motion to set aside a default judgment, "good cause" requires not only considering the factors set out in Syllabus point 3 of *Parsons v. Consolidated Gas Supply Corp.,* 163 W.Va. 464, 256 S.E.2d 758 (1979),[11] but also requires a showing that a ground set out under Rule 60(b) of the West Virginia Rules

of Civil Procedure has been satisfied. *See Parsons,* 163 W.Va. at 471, 256 S.E.2d at 762 ("Under … the West Virginia … Rules of Civil Procedure, there is the necessity to show some excusable or unavoidable cause[.]"). Thus, Ms. LaRocco misunderstands our law when she argues that she was improperly required to satisfy two separate standards. She was required to establish excusable neglect as an *element* of "good cause" *not* in addition to "good cause." In summary, the *Parsons* factors and excusable neglect, or any other relevant factor under Rule 60(b), constitute "good cause" for setting aside a default judgment.[12]

### B. Application of the Parsons factors and Rule 60(b)'s Excusable Neglect

 Having clarified that the applicable standard for motions to set aside default judgments is that of "good cause," and recognizing that excusable neglect as a ground under Rule 60(b) is an element of "good cause," we conclude that the circuit court applied the appropriate standard. Consequently, we must now determine whether the circuit court abused its discretion in the manner in which it applied that standard. To do so, we review the *Parsons* factors and the evidence related to excusable neglect.

9. We should point out that "excusable neglect" is one of the grounds enumerated in Rule 60(b) of the West Virginia Rules of Civil Procedure. See note 5, *supra,* for the relevant language of Rule 60(b). While *Parsons* requires a showing of excusable neglect under Rule 60(b), the rule itself provides other grounds for granting relief. Insofar as this opinion does not require examination of any other factor under Rule 60(b), we will refrain from determining to what extent the other factors under Rule 60(b) have application to a default judgment; however, we recognize there are other factors under Rule 60(b) that may justify relief.

10. Prior to the 1998 amendment, Rule 55(c) of the West Virginia Rules of Civil Procedure read as follows: "*Setting aside default judgment.*—A judgment by default may be set aside in accordance with Rule 60(b)."

11. Syllabus point 3 of *Parsons* states

"In determining whether a default judgment should be entered in the face of a Rule 6(b)

motion or vacated upon a Rule 60(b) motion, the trial court should consider: (1) The degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; and (4) the degree of intransigence on the part of the defaulting party."

163 W.Va. 464, 256 S.E.2d 758 (1979). *Accord* Syl. pt. 2, *Jackson Gen. Hosp. v. Davis,* 195 W.Va. 74, 464 S.E.2d 593 (1995); Syl. pt. 2, *Monterre v. Occoquan Land Dev.,* 189 W.Va. 183, 429 S.E.2d 70 (1993).

12. While this opinion sets forth the standards for setting aside defaults and default judgments, it does not negate the preference that cases be adjudicated on their merits when appropriate. *See Parsons,* 163 W.Va. at 471, 256 S.E.2d at 762 ("In determining the discretion issue, we have established as a basic policy that cases should be decided on their merits, and consequently [defaults and] default judgments are not favored[.]").

64

**1. The degree of prejudice.** The initial inquiry is the degree of prejudice to Hardwood if the default judgment is vacated. Ms. LaRocco argues that Hardwood is not prejudiced by the continuation of the action. We agree. Hardwood has not argued that it would be prejudiced from setting aside the judgment, and nothing in our independent review of the record leads us to believe any prejudice to Hardwood would result if the default judgment was set aside.

■ **2. The presence of material issues of fact and meritorious defenses.** The second factor to be considered is whether Ms. LaRocco has shown that material issues of fact and meritorious defenses exist. We are guided by the explanation that this factor focuses on whether " 'there is ... reason to believe that a result different from the one obtained would have followed from a full trial.' *Hinerman v. Levin*, 172 W.Va. 777, 783–84, 310 S.E.2d 843, 850 (1983)." *Cales*, 212 W.Va. at 242, 569 S.E.2d at 489.

Ms. LaRocco insists that she has three meritorious defenses: (1) she did not personally guarantee the note, (2) there was no consideration for the alleged guarantee, and (3) the balance of the debt is in question. While we cannot comment with certainty at this stage on the merits of these defenses, we do find support in the record for the proposition that while defenses are asserted, they are not necessarily meritorious defenses. *See, e.g., State ex. rel. United Mine Workers of Am., Local Union 1938 v. Waters*, 200 W.Va. 289, 299, 489 S.E.2d 266, 276 (1997) ("There is no reason to conclude at this juncture that the petitioners' defenses are not meritorious.").

First, Ms. LaRocco contends that she signed the promissory note in her capacity as president of her company, and not in her personal capacity. However, the record reveals that the promissory note was the result of negotiated, meaningful discussions between the parties, and that the note itself indicates Ms. LaRocco was signing as the personal guarantor.

■ Second, Ms. LaRocco argues that there was no consideration for her guarantee. A review of the principles of contract law are helpful in our analysis of the guarantee issue. We have stated that " '[t]he fundamentals of a legal 'contract' are competent parties, legal subject-matter, valuable consideration, and mutual assent. There can be no contract, if there is one of these essential elements upon which the minds of the parties are not in agreement.' Syllabus Point 5, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926)." Syl. pt. 9, *Ways v. Imation Enters. Corp.*, 214 W.Va. 305, 589 S.E.2d 36 (2003) (per curiam). In this case, there is no dispute concerning the competency of the parties, legal subject-matter, and mutual assent of the parties' agreement. The issue here involves consideration and Ms. LaRocco's argument that there was no consideration for her guarantee. "For the purposes of contract law, 'consideration consists either in some right, interest or benefit accruing to one party or some forbearance, detriment or responsibility given, suffered or undertaken by the other.' " *Verizon West Virginia, Inc. v. West Virginia Bureau of Employment Programs, Workers' Comp. Div.*, 214 W.Va. 95, 133, 586 S.E.2d 170, 208 (2003) (Davis, J., dissenting) (quoting *National Educ. Ass'n–Rhode Island by Scigulinsky v. Retirement Bd. of Rhode Island Employees' Ret. Sys.*, 890 F.Supp. 1143, 1159 (D.R.I.1995)). Inspection of the record in the instant matter indicates that consideration for the note was shown to exist in the fact that the note was the vehicle through which Hardwood agreed to extend credit to Ms. LaRocco for her business to continue its operation. Significantly, consideration was also found in the fact that Hardwood consolidated past debts for Ms. LaRocco into the note and forbore filing any suit based on the past-due accounts. Therefore, consideration is satisfied for the purposes of our review.

Third, Ms. LaRocco alleges that the balance of the debt is incorrect and that monies paid were inaccurately applied to the wrong accounts. Ms. LaRocco's final defense is easily handled. If the damages were miscalculated, they can easily be ascertained by the promissory note and recalculated. After Ms. LaRocco filed her motion to set aside the default judgment, a hearing was held before the trial court and these defenses were presented. The transcript of the hearing re-

veals that counsel for Hardwood explained how the sum certain was calculated under the promissory note. Regardless, counsel for Hardwood stated that if there was a miscalculation, the amount of damages owed could be recalculated.

During this hearing, the trial court requested briefs from the parties regarding the meritorious defenses prior to ruling. After reviewing the briefs, the trial court then denied the motion to set aside. While Ms. LaRocco has presented what she describes as three meritorious defenses, we are not convinced that these defenses would have resulted in a different outcome if there had been a trial.

**3. The significance of the interests at stake.** The third consideration is the interests at stake in the litigation. The damages in this case are for $15,435.98, based on the value set forth in the promissory note, plus accrued interest of $1,888.86. We are not in a position to affirmatively state that these damages are an insignificant amount. *See, e.g., Parsons*, 163 W.Va. at 473, 256 S.E.2d at 763 (stating that "monetary damages in the amount of $35,000 . . . is not an insignificant claim").

**4. The degree of intransigence by the defaulting party.** We must next review the degree of intransigence by Ms. LaRocco in not responding to the complaint. We have previously stated that "any evidence of intransigence on the part of a defaulting party should be weighed heavily against him in determining the propriety of a default judgment." *Hinerman*, 172 W.Va. at 782, 310 S.E.2d at 849. In the present case, the complaint was filed on September 19, 2003, and Ms. LaRocco signed the restricted delivery notice on October 1, 2003. On December 3, 2003, Hardwood moved for default judgment and sent notice to Ms. LaRocco. The default judgment was granted on December 9, 2003, and the order was sent to Ms. LaRocco. Hardwood then sought execution of the judgment. It was not until this time that Ms. LaRocco responded by filing her motion to set aside the default judgment. Because of the many opportunities afforded to her for an earlier response, we find this intransigence to be significant.

**5. The existence of excusable neglect.** The final consideration under *Parsons* is whether Ms. LaRocco satisfied a ground under Rule 60(b). In this case, the issue is whether she has shown some excusable neglect. As we have previously recognized, "the stronger the excusable neglect or good cause shown, the more appropriate it is to give relief against the default judgment." *White v. Berryman*, 187 W.Va. 323, 332, 418 S.E.2d 917, 926 (1992) (internal citations omitted). In the instant case, Ms. LaRocco failed to distinguish the pleadings in the present case from pleadings in a separate and unrelated bankruptcy case and did not afford the documents the attention they required. However, the present case is styled in Ms. LaRocco's name, whereas the bankruptcy case is styled in the company's name; therefore, it is inexcusable for Ms. LaRocco to fail to distinguish between the two suits. Moreover, even after the default judgment was entered, Ms. LaRocco still did not respond until after Hardwood attempted to execute the judgment. The failure to distinguish this case from a differently-styled case, coupled with the complete lack of action even after the default judgment was entered, does not constitute excusable neglect.

**6. Weighing the *Parsons* factors and Rule 60(b)'s excusable neglect.** We have determined that no undue prejudice would result against Hardwood by setting aside the default judgment. We have also determined that the amount of damages is not insignificant. However, although we have determined that Ms. LaRocco presented three defenses, they do not rise to the level of meritorious defenses. Weighing these findings against Ms. LaRocco's intransigence and her inability to present any excusable neglect for not filing a timely answer, we believe the proper balance requires us to affirm the trial court's denial of Ms. LaRocco's motion to set aside the default judgment.

We have previously recognized the deference afforded to trial courts in this regard when we stated: "[A]lthough this court is quite willing to review default judgments and to overturn them in cases where good cause is shown, a demonstration of such good cause is a necessary predicate to our overruling a

lower court's exercise of discretion." *Cales*, 212 W.Va. at 243, 569 S.E.2d at 490 (quoting *Hinerman*, 172 W.Va. at 782, 310 S.E.2d at 848). Thus, we find the circuit court did not abuse its discretion when it denied Ms. LaRocco's Rule 60(b) motion to set aside the default judgment.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the December 9, 2004, order of the Circuit Court of Greenbrier County.

Affirmed.

ALBRIGHT, Justice, concurring:

(Filed May 11, 2006)

While I agree with the result reached in this case, I write separately because the majority has omitted from its discussion any reference to the well-established approach this Court has applied to its review of default judgments. Historically, default judgments have been a disfavored mechanism for case resolution. This is because of our stated policy of preferring that cases be resolved on their merits. As a result, this Court has regularly applied the provisions of Rule 60(b) in a liberal or flexible manner with the objective of encouraging the resolution of a case on its merits rather than through the entry of a default judgment. *See* Syl. Pt. 2, *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 190 S.E.2d 779 (1972) (holding that "[i]nasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction"); *accord Budget Blinds, Inc. v. White*, 2006 WL 891187 (D.N.J.2006) (recognizing that "[c]ourts in this circuit are instructed that, when 'passing upon default judgments, Rule 60(b) should be "given a liberal construction [and][a]ny doubt should be resolved in favor

of the petition to set aside the judgment so that cases may be decided on the merits" ' ") (citations omitted); *Nisson v. Lundy*, 975 F.2d 802, 807 (11th Cir.1992) (stating that "Rule 60(b) is to be given a liberal and remedial construction"); *see generally* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* vol. 11, 231–32 § 2852 (2nd ed., West 1995) (observing that especially with regard to default judgments "courts have been more flexible in providing relief [under Rule 60(b)] in order to decide cases on the merits").

In *Parsons v. Consolidated Gas Supply Corp.*, 163 W.Va. 464, 256 S.E.2d 758 (1979), we recognized that our policy of liberally construing Rule 60(b) motions to vacate default judgments was expressly in accord with the approach taken by the federal courts to this same issue.[1] *Id.* at 471, 256 S.E.2d at 762. Thus, in cases where material issues of fact exist; meritorious defenses have been asserted; significant interests are at stake; and the defaulting party's degree of intransigence is either minimal or not readily apparent, this Court has made it clear that our policy is to prefer that a decision be reached on the merits of the case rather than to permit the case to be abruptly terminated on procedural grounds. *See id.*

By omitting any serious discussion regarding the critical policy considerations that underlie a Rule 60(b) motion to set aside a default judgment, the majority has, in my opinion, wrongly eviscerated a necessary element of elasticity from the inquiry into the existence of good cause. And, by advancing a more rigid approach to this issue, the majority imprudently elevates concerns for finality over the equally, if not more, compelling policy concern of preferring that cases be resolved on their merits where possible. *See Meadows v. Cohen*, 409 F.2d 750, 752 n. 4 (5th Cir.1969) (recognizing that "[a] proceeding under the rule [60(b) ] 'calls for a delicate

1. Interestingly, the majority relies upon federal law as support for its analysis of Rule 55(c) and yet steers clear of any acknowledgment of this Court's parallel approach to that of the federal courts with regard to reviewing Rule 60(b) motions to vacate default judgments in a liberal manner. What the majority does is to hide behind eponymous commentary which recognizes

that, as between defaults and default judgments, the former is reviewed more liberally than the latter based on finality principles. This distinction, however, does not "explain away" the accepted and established liberal review of Rule 60(b) motions seeking to set aside default judgments.

adjustment between the desirability of finality and the prevention of injustice'") (quoting *In re Casco Chem. Co.*, 335 F.2d 645, 651 (5th Cir.1964)).

In failing to recognize that the "good cause" inquiry that accompanies any analysis of whether there are grounds to vacate a default judgment is traditionally performed in a liberal manner, the majority veers sharply from the longstanding approach taken by this Court. Moreover, by adopting a test for determining "good cause" that seeks to sidestep the need for flexibility and overlooks the need to promote case resolution based on merit, the approach taken by the majority is likely to prove a disservice to the very interests of promoting justice and fairness it arguably seeks to advance. *See MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 755 (8th Cir.1996) (explaining that a liberal construction is afforded to Rule 60(b) to do substantial justice and "'"to prevent the judgment from becoming a vehicle of injustice"'") (citations omitted).

I am authorized to state that Justice STARCHER joins in the concurring opinion.