# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2015 Term

No. 14-0215

FILED

**March 11, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**LEXON INSURANCE CO.,**
**Defendant Below, Petitioner**

**V.**

**COUNTY COUNCIL OF BERKELEY COUNTY, WEST VIRGINIA,**
**AND BERKELEY COUNTY PLANNING COMMISSION,**
**Plaintiffs Below, Respondents**

_____

**Appeal from the Circuit Court of Berkeley County**
**Honorable Gray Silver, III, Judge**
**Civil Action No. 11-C-973**
**REVERSED AND REMANDED**

_____

**Submitted: February 11, 2015**
**Filed: March 11, 2015**

Ancil G. Ramey
Steptoe & Johnson PLLC
Huntington, West Virginia
Eric J. Hulett
Steptoe & Johnson PLLC
Martinsburg, West Virginia
**Attorneys for the Petitioner**

William J. Powell
Jackson Kelly PLLC
Martinsburg, West Virginia
Albert F. Sebok
Ellen S. Cappellanti
Jackson Kelly PLLC
Charleston, West Virginia
**Attorneys for the Respondents**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "Generally, under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve a sum certain or a sum which can by computation be made certain, a judgment by default may be entered against a party who has defaulted as to liability without prior notice to that party."  Syllabus point 3, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002).

2.      "The term 'sum certain' under *West Virginia Rules of Civil Procedure* Rule 55(b)(1) . . . contemplates a situation where the amount due cannot be reasonably disputed, is settled with respect to amount, ascertained and agreed upon by the parties, or fixed by operation of law.  A claim is not for a 'sum certain' merely because the claim is stated as a specific dollar amount in a complaint, verified complaint, or affidavit."  Syllabus point 3, *Farm Family Mutual Insurance Co. v. Thorn Lumber Co.*, 202 W. Va. 69, 501 S.E.2d 786 (1998).

3.      The sum stated on the face of a performance bond is not equal to a "sum certain" for purposes of obtaining default judgment without a hearing under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure.

4.    "When unliquidated damages are involved, a plaintiff must utilize the procedure under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure for obtaining default damages against a defaulting party. . . ." Syllabus point 6, in part, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002).

5.    "Pursuant to Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve damages other than a sum certain or a sum which can by computation be made certain, a defaulting party who has appeared in the action must be provided notice of the hearing to determine the amount of unliquidated damages to be assessed." Syllabus point 4, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002).

6. "'Although courts should not set aside default judgments or dismissals without good cause, it is the policy of the law to favor the trial of all cases on their merits.' Syl. Pt. 2, *McDaniel v. Romano*, 155 W. Va. 875, 190 S.E.2d 8 (1972)." Syllabus point 6, *Gray v. Mena*, 218 W. Va. 564, 625 S.E.2d 326 (2005).

**Davis, Justice:**

In this appeal, Petitioner Lexon Insurance Co. ("Lexon"),[1] defendant below, challenges the entry of default judgment against it in an action filed by Respondents County Council of Berkeley County, West Virginia, and Berkeley County Planning Commission (collectively "Berkeley County"). Because we find that the damages sought in this case are not a "sum certain" as required by West Virginia Rule of Civil Procedure 55(b)(1), default judgment was improperly granted under that rule. In addition, we find that default was improperly entered under the unique circumstances presented herein where the parties failed to follow the Rules of Civil Procedure pertaining to the extension of the time for filing an answer. Accordingly, we reverse the Circuit Court of Berkeley County's order denying Lexon's motion to set aside default judgment and remand this case for further proceedings.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case arises from two performance bonds issued by Lexon to DLM, LLC ("DLM").[2] DLM sought to develop a 255-unit subdivision known as Chandler's Glen in Berkeley County, West Virginia. As part of the approval process for the Chandler's Glen

---

[1]Lexon is a Texas corporation authorized to do business in the State of West Virginia.

[2]DLM was named as a defendant in the action below, but is not a party to this appeal.

1

subdivision final plat, Berkeley County's subdivision ordinance required DLM to either complete all of the required site improvements and infrastructure for the project or post bonds guaranteeing future completion. On November 8, 2005, Lexon issued a performance bond in the amount of $1,050,000. This bond guaranteed completion of the site improvements for the Chandler's Glen subdivision. A second performance bond in the amount of $2,388,565.20, which guaranteed completion of the infrastructure for the Chandler's Glen subdivision, was issued by Lexon on February 10, 2006. Both of the bonds issued by Lexon named Berkeley County as the obligee. Upon obtaining the first bond in 2005, DLM began grading the Chandler's Glen subdivision site and installing site improvements. Thereafter, on November 17, 2010, Berkeley County learned that DLM had filed for bankruptcy. DLM had not completed the site improvements and infrastructure for the Chandler's Glen subdivision site. Accordingly, DLM had defaulted under both bonds.

On December 9, 2010, Berkeley County made a demand on Lexon under the $1,050,000 site improvement performance bond. Subsequently, on January 25, 2011, Berkeley County made a demand on Lexon under the $2,388,565.20 infrastructure performance bond. Lexon responded by letter dated February 24, 2011, acknowledging receipt of Berkeley County's demands. Over the following months, Berkeley County and Lexon met on at least two occasions and also exchanged communications in an attempt to resolve the matter. Berkeley County rejected offers made by Lexon to either complete only

2

those portions of the Chandler's Glen subdivision that contained purchased lots, or to settle the matter for an amount that was less than the face value of the two performance bonds. By letter dated October 6, 2011, Berkeley County reiterated its demand for the full proceeds of the two performance bonds.

Having received no response to its letter of October 6, 2011, Berkeley County filed the instant lawsuit, naming Lexon and DLM as defendants, on November 17, 2011. In its complaint, Berkeley County sought "specific performance of the Surety's obligations according to the terms of the subject bonds," in addition to its "costs and expenses in prosecution of this matter; and, for such other relief as the Court deems appropriate and proper."

Thereafter, Lexon and Berkeley County entered an informal agreement to extend the time for Lexon to file a response to Berkeley County's complaint. This agreement is reflected in an email from Bruce Maas, counsel for Lexon, to Norwood Bentley, Legal Director for Berkeley County Council. The email, dated December 15, 2011, stated, in relevant part, that "this will confirm that Lexon has an indefinite extension of time to respond to the complaint and that you will give me 15 days notice if this consent is withdrawn." By subsequent email, dated April 20, 2012, Norwood Bentley advised Bruce Maas that Berkeley County had "decided to go forward and press the litigation which was earlier filed against

3

your client, Lexon. . . . Will appreciate your answer at your earliest convenience." This email was followed, on May 9, 2012, by another email that included a copy of the April 20 email and sought to confirm receipt of that email:

> I assume you received the notice below on April 20, as it did not come back to me as undeliverable. As you will recall, we had agreed that after notice, you would have 15 days in which to respond with an answer. I will appreciate your indicating to me that you have received this communication.

Also on May 9, 2012, Berkeley County sent a letter to Bruce Maas via the United States Postal Service, which letter informed Mr. Maas that,

> [h]aving sent two electronic mail notices to you concerning Berkeley County's decision to move forward and prosecute the civil action against your client, above referenced, which civil action was earlier served, and about which you and I have had discussion, and having received no response from you, I thought it wise to give you notice via snail mail. Thus, this notice.
>
> As you will recall, we had agreed that you would have fifteen days from the date of notice in which to answer the complaint. My first notice was dated April 20, 2012. Please let me know that you have received this communication and when I might expect your answer.

Having received no response to its communications of April 20 and May 9, Berkeley County, on June 14, 2012, filed a motion for default judgment, pursuant to Rule

4

55(b)(1) of the West Virginia Rules of Civil Procedure, against Lexon.[3]  Service of the motion upon Lexon was had by mailing the same to its counsel, Mr. Maas.  Thereafter, intermittent settlement negotiations continued between Berkeley County and Lexon.  During this time, Berkeley County indicated that it would not encourage the circuit court to rule on its motion for default.  Nevertheless, on July 5, 2012, the Circuit Court entered default judgment against Lexon for the sum of $3,438,565.20 (the total face value of the two bonds at issue), plus post judgment interest.  Lexon continued to pursue a settlement and failed to immediately appear in the action and move to set aside the default judgment.  Instead, Lexon sought Berkeley County's agreement to vacate the default judgment.  Berkeley County refused.  Lexon obtained local counsel and continued, unsuccessfully, its attempts to get Berkeley County to agree to vacate the default judgment.  Finally, on February 22, 2013, Lexon made its first appearance in this action by filing its Motion to Set Aside Default Judgment pursuant to Rule 55(c) of the West Virginia Rules of Civil Procedure.  By order entered February 6, 2014, the circuit court denied Lexon's motion.  This appeal followed.

---

[3]Meanwhile, on May 30, 2012, NLP Finance, LLP ("NLP"), filed a motion to intervene as a plaintiff.  NLP is the current holder of a construction loan executed by DLM and is the first lienholder on the remaining, unsold, platted lots, roads, streets, and common areas of the Chandler's Glen subdivision area.  The circuit court granted NLP's motion to intervene by order entered August 1, 2012, having received no pleadings in opposition to the motion from either Berkeley County or Lexon.  NLP is not a party to this appeal.

## II.

## STANDARD OF REVIEW

In this appeal, Lexon seeks reversal of the circuit court's order denying its motion to set aside default judgment. It is well settled that

> "[a] motion to vacate a default judgment is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of discretion." Syl. Pt. 3, *Intercity Realty Co. v. Gibson*, 154 W. Va. 369, 175 S.E.2d 452 (1970)[, *overruled on other grounds by Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002)].

Syl. pt. 1, *Drumheller v. Fillinger*, 230 W. Va. 26, 736 S.E.2d 26, 27 (2012). In other words, "'"[a]ppellate review of the propriety of a default judgment focuses on the issue of whether the trial court abused its discretion in entering the default judgment." Syllabus point 3, *Hinerman v. Levin*, 172 W. Va. 777, 310 S.E.2d 843 (1983).' Syl. pt. 1, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002)." Syl. pt. 2, *Hardwood Grp. v. Larocco*, 219 W. Va. 56, 631 S.E.2d 614 (2006). With this standard as our guide, we proceed to evaluate the arguments herein raised.

## III.

## DISCUSSION

In this appeal, Lexon raises several grounds for reversing the circuit court's denial of its motion to set aside the judgment of default entered against it. However, we need

address only two issues, the propriety of the default judgment under West Virginia Rule of Civil Procedure 55(b)(1), and the propriety of default in light of the parties' agreement to informally extend the time for Lexon to answer the complaint.[4]  We address these issues in turn.

### A.  *Propriety of Default Judgment Under Rule 55(b)(1)*

Lexon first argues that the circuit court erred by failing to set aside the default judgment where it received no notice of hearing, and no hearing was conducted on damages despite the fact that Lexon had a right to elect a method of curing the default of its principal as opposed to paying monetary damages.  In essence, Lexon contends that requirements for default judgment under Rule 55(b)(1) were not met.  Berkeley County responds that it

---

[4]Lexon also has complained of insufficient service of process based upon Berkeley County's failure to serve Lexon, a foreign corporation authorized to do business in the State of West Virginia, through the West Virginia Secretary of State.  We find, based upon the particular facts herein presented, this issue was waived below.  *See* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 12(h)(1), at 417 (4th ed. 2012) ("An objection to sufficiency of service of process must be raised timely in a pre-answer motion, or where no pre-answer motion is made, then by answer.  Failure to properly use either method to object constitutes a waiver. . . .  A defendant may waive the defense of insufficiency of service of process through . . . conduct inconsistent with the defense.").  In this case, Lexon received actual notice of the action in November 2011, when it received a copy of the summons and complaint via the United States Postal Service.  However, rather than raising an objection to the sufficiency of service, Lexon instead engaged in negotiations with Berkeley County for more than a year, and did not make an appearance in the circuit court until February 2013, which was more than seven months after the circuit court had entered default judgment against it.

properly moved for default judgment under Rule 55(b)(1); therefore, no notice to Lexon or hearing on damages was required. This is so, argues Berkeley County, because Lexon had refused Berkeley County's demand for performance, which refusal obligated Lexon to pay the full penal sum of its bonds as liquidated damages. We disagree.

Rule 55(b) provides two methods for entering default judgment:

> (b) *Judgment*. – Judgment by default may be entered as follows:
>
> (1) By the clerk. – When the plaintiff's claim against a defendant *is for a sum certain or for a sum which can by computation be made certain*, the court upon request of the plaintiff and upon affidavit of the amount due shall direct the entry of judgment by the clerk for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant, incompetent person, or convict.
>
> (2) By the court. – In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant, incompetent person, or convict unless represented in the action by a guardian, guardian ad litem, committee, conservator, curator, or other representative who has appeared therein. *If the party against whom judgment by default is sought has appeared in the action, the party* (or, if appearing by representative, the party's representative) *shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an

8

investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary.

(Emphasis added).

As noted above, Berkeley County sought default judgment under Rule 55(b)(1). Critically, there are certain prerequisites to seeking default judgment pursuant to Rule 55(b)(1). In this regard, it has been observed that

> [t]he prerequisites for entry of default judgment under Rule 55(b)(1) are that: (1) *damages are for a sum certain*, (2) the defendant has been defaulted for failure to appear, (3) the defendant is not an infant, incompetent person, or convict, (4) a motion by the plaintiff to the trial court, and (5) an affidavit of the amount due. When these factors are in place the rule states that the court must direct the entry of judgment by the court clerk for that amount and costs against the defendant.

Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 55(b)(1)[2], at 1193 (4th ed. 2012) (footnote omitted) (emphasis added). Relevant to the instant appeal is the "sum certain" prerequisite:

> Generally, under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure, *when the damages sought by a plaintiff involve a sum certain or a sum which can by computation be made certain*, a judgment by default may be entered against a party who has defaulted as to liability without prior notice to that party.

Syl. pt. 3, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002) (emphasis added).

This Court addressed the definition of the term "sum certain" in *Farm Family*

9

*Mutual Insurance Co. v. Thorn Lumber Co.*, 202 W. Va. 69, 501 S.E.2d 786 (1998). *Farm Family* involved a subrogation action in which an insurer, Farm Family Mutual, sought to recover the full amount it had paid to its insured to cover a loss resulting from the alleged negligence of the defendant, which was $135,416.37. When the defendant failed to appear in the action, Farm Family Mutual sought default judgment under Rule 55(b)(1). In support of its motion for default judgment, Farm Family Mutual presented an affidavit stating that it was owed $135,416.37 by the defendant. The circuit court accepted the amount as a "sum certain" and granted default judgment to Farm Family Mutual without first conducting an evidentiary hearing on the issue of damages. On appeal, this Court was asked to decide whether the damages in the case were, in fact, a sum certain or an amount that could be rendered certain by calculation. Observing that "[t]ypical 'sum certain' situations covered by Rule 55(b)(1) [1959] include actions on money judgments, negotiable instruments, or similar actions where the damages can be determined without resort to extrinsic proof," this Court held that

> [t]he term "sum certain" under *West Virginia Rules of Civil Procedure* Rule 55(b)(1) . . . contemplates a situation where the amount due cannot be reasonably disputed, is settled with respect to amount, ascertained and agreed upon by the parties, or fixed by operation of law. A claim is not for a "sum certain" merely because the claim is stated as a specific dollar amount in a complaint, verified complaint, or affidavit.

*Farm Family Mut. Ins. Co.*, 202 W. Va. at 74, 501 S.E.2d at 791, & Syl. pt. 3.[5] Farm Family

Mutual's argument that it sought the sum certain amount equal to the amount it had paid to

its insured pursuant to the relevant insurance contract was rejected. In rejecting the

argument, this Court explained that

> [t]he amount sought by Farm Family Mutual was not predicated upon a precise dollar figure, *i.e.*, a dishonored negotiable instrument or a contract prescribing liquidated damages, where recovery is upon a sum certain. Instead, the action was based upon the allegation that appellant Farmer Boy was negligent, and that Farmer Boy was liable for any damages proximately caused by that negligence.

*Farm Family Mut. Ins. Co.*, 202 W. Va. at 74, 501 S.E.2d at 791.

It similarly has been recognized that the penal sum of a bond is not recognized

to be a settled amount of liquidated damages payable upon breach of the bond. For example,

one commentator has observed that,

> [a]s a fundamental principle, the amount of the bond, its "penal sum," is not treated as an amount of "liquidated damages" to be awarded for any breach by the principal; rather, the penal sum states the maximum amount for which the surety agrees to be held responsible . . . .
>
> Accordingly, *when the principal's breach of duty causes less damage than the penal sum, the aggrieved bond claimant is*

---

[5]The 1959 version of Rule 55(b)(1) was being addressed in *Farm Family Mutual Insurance Co. v. Thorn Lumber Co.*, 202 W. Va. 69, 501 S.E.2d 786 (1998). The rule was amended in 1989. Nevertheless, because the revised rule also refers to a "sum certain," Syllabus point 3 of *Farm Family* remains applicable.

11

*entitled only to the amount of actual damage*.

11 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D* § 163:9, at 163-19 (2005) (emphasis added) (footnotes omitted). *See also* 4A Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 12:22, at 94 (2009) ("The limit of the surety's financial exposure under a performance bond is the sum stated on the face of the performance bond *as the surety's maximum liability to the obligee* for completion of the contract or payment of the oblige's actual costs of completion. This sum historically has been referred to as the 'penal sum' or 'bond penalty' – terms which originated in earlier times when the penal sum was forfeited entirely upon the principal's default as a 'penalty,' rather than serving as a mere source for payment of the obligee's actual damages up to the penal sum limit. *Outright forfeiture provisions in modern surety bonds are rare*." (emphasis added) (footnotes omitted)).

Courts addressing this issue have reached the same conclusion as the commentators. In *St. Paul Mercury Insurance Co. v. Department of State, Division of Corrections*, 581 So. 2d 976, 977 (Fla. Dist. Ct. App. 1991) (per curiam), a trial court had awarded damages equal to the full amount of a bond. In reducing the award to the amount of damages the state actually suffered, the Florida District Court of Appeal commented that

> [a] bond conditioned to be void on the fulfillment by the
> principal of all of his duties is operative as a promise that either
> all those duties will be performed, or that the obligee will be
> indemnified *within the limit of the penalty* in the case of

12

non-performance. Only in cases where the harm inflicted by the breach of a bonded obligation is not capable of being measured and liquidated in money will the penalty of the bond be enforced. In all other cases, the plaintiff's recovery will not exceed the amount of the injury that he proves. Corbin on Contracts, §§ 258, 800.

Here, St. Paul argues, and the state concedes, that although the bond was issued in the amount of $697,045, the state actually paid only $674,045 under the bonded contract. . . .

*St. Paul Mercury Ins. Co.*, 581 So. 2d at 977. *See also Westchester Fire Ins. Co. v. City of Brooksville*, 731 F. Supp. 2d 1298, 1308 (M.D. Fla. 2010) ("The measure of recovery under a performance bond is the amount actually and reasonably expended in completing the duties under the bonded contract." (quotations and citation omitted)), *aff'd*, 465 F. App'x 851 (11th Cir. 2012); *Turner Constr. Co. v. First Indem. of Am. Ins. Co.*, 829 F. Supp. 752, 759 (E.D. Pa. 1993) ("[W]hen a performance bond surety fails to complete its principal's work, the surety is 'liable for the loss plaintiff sustained, not exceeding the amount of the bond' because of the surety's breach of its 'absolute undertaking to erect and complete the building'. *Purdy v. Massey*, 306 Pa. 288, [293,] 159 A. 545, 547 (1932)."), *aff'd sub nom. Turner Constr. Co. v. Space U.S.A., Inc.*, 22 F.3d 303 (3d Cir. 1994). *But see Synovus Bank v. County of Henderson*, 222 N.C. App. 319, 729 S.E.2d 731 (2012) (unpublished opinion) (treating performance bond as penal bond and awarding full amount).

The indefinite nature of amount of the damages forfeited under a performance bond is further demonstrated by this very case. Indeed, the circuit court's default judgment

13

order, as well as Berkeley County's representations to this Court, establish that the damages sought in this action are not a sum certain. In this respect, the circuit court expressly concluded in its default judgment order that Berkeley County "represented that it is only seeking to retain proceeds from Lexon under the bonds in the amount that the county actually expends installing the site improvements and infrastructure for Chandler's Glen, and that *any amount of the default judgment not so expended will be returned to Lexon*." (Emphasis added). Furthermore, according to Berkeley County's brief, relevant regulations provide that "'[t]he bond shall be subject to forfeiture to the County Commission *for the sole purpose of installation or completion of required improvements*.'" (citing Subdivision Regulation, Berkeley County, West Virginia, § 702.1 (2004) (emphasis added)). Thus, the bond is subject to forfeiture only insofar as necessary for *installation or completion of required improvements. See also* W. Va. Code § 8A-6-1(b) (2004) (Repl. Vol. 2012) (requiring that the "money from the bond shall only be used by the governing body to which the bond is payable, for the completion of the infrastructure construction, when the infrastructure construction is not completed as approved at the issuance of the bond"). Finally, we note that Berkeley County conceded during oral argument before this Court that some improvements to Chandlers Glen were made by developer DLM, and Berkeley County did not know the cost to complete the site improvements and infrastructure for the Chandler's Glen subdivision.

14

Based upon our above analysis, we now hold that the sum stated on the face of a performance bond is not equal to a "sum certain" for purposes of obtaining default judgment without a hearing under Rule 55(b)(1) of the West Virginia Rules of Civil Procedure.

Because Berkeley County's claim against Lexon was not for a "sum certain" as required by Rule 55(b)(1), the damages were unliquidated. "When unliquidated damages are involved, a plaintiff must utilize the procedure under Rule 55(b)(2) of the West Virginia Rules of Civil Procedure for obtaining default damages against a defaulting party. . . ." Syl. pt. 6, in part, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479. Thus, Lexon was entitled to three days notice and a hearing pursuant to Rule 55(b)(2):

> Pursuant to Rule 55(b)(2) of the West Virginia Rules of Civil Procedure, when the damages sought by a plaintiff involve damages other than a sum certain or a sum which can by computation be made certain, a defaulting party who has appeared in the action must be provided notice of the hearing to determine the amount of unliquidated damages to be assessed.

Syl. pt. 4, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479. Accordingly, we find that the circuit court erred in granting default judgment in favor of Berkeley County pursuant to Rule 55(b)(1), and without affording Lexon notice and a hearing on damages pursuant to Rule 55(b)(2). This conclusion, however, does not end our analysis. We must additionally

15

examine the propriety of the circuit court's entry of default against Lexon.[6]

## *B. Propriety of Default*

The summons served on Lexon with Berkeley County's complaint expressly stated that "[y]ou are required to serve your answer within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint . . . ." Thus, this summons complied with the requirement of Rule 4(a) of the West Virginia Rules of Civil Procedure that the summons "shall also state the time within which the defendant must appear and defend, and notify the defendant that failure to do so will result in a judgment by default against the defendant for the relief demanded in the complaint."

The record reflects, however, that prior to the expiration of the thirty-day period, Berkeley County waived its right to pursue a default pursuant to the West Virginia Rules of Civil Procedure by entering an informal agreement with Lexon allowing Lexon an indefinite time within which to respond to Berkeley County's complaint. This informal agreement is reflected in an email dated December 15, 2011, in which counsel for Lexon sought to confirm that Lexon was being given "an indefinite extension of time to respond to

---

[6]This Court has recognized that "[a] default relates to the issue of liability and a default judgment occurs after damages have been ascertained." Syl. pt. 2, *Cales v. Wills*, 212 W. Va. 232, 569 S.E.2d 479 (2002).

16

the complaint and that you [Berkeley County] will give me 15 days notice if this consent is withdrawn." Lexon, in apparent reliance on this agreement, did not file its answer within the thirty-day period mandated by the summons. Likewise, Berkeley County, apparently also relying on the agreement, failed to move for default at the expiration of thirty days following service of the summons and complaint.

Lexon now argues that Berkeley County failed to provide it with the agreed upon fifteen-day notice that Berkeley County was withdrawing its consent to the indefinite extension for filing an answer.[7] Berkeley County, on the other hand, contends that it gave such notice by virtue of three communications. First, by email dated April 20, 2012, Berkeley County advised counsel for Lexon that it had "decided to go forward and press the litigation which was earlier filed against your client, Lexon. . . . *Will appreciate your answer at your earliest convenience*." (Emphasis added). This email was followed, on May 9, 2012, by another email seeking to confirm receipt of the April 20 email. Also on May 9, 2012, Berkeley County sent a letter to counsel for Lexon, via the United States Postal Service, which letter informed Mr. Maas that,

> [h]aving sent two electronic mail notices to you concerning Berkeley County's decision to move forward and

---

[7]The issue of setting aside the default was briefed in the context of the factors cited in Syllabus point 3 of *Parsons v. Consolidated Gas Supply Corp.*, 163 W. Va. 464, 256 S.E.2d 758 (1979). However, because of the unique procedural posture of this case, we need not address the *Parsons* factors.

17

prosecute the civil action against your client, above referenced, which civil action was earlier served, and about which you and I have had discussion, and having received no response from you, I thought it wise to give you notice via snail mail. Thus, this notice.

As you will recall, we had agreed that you would have fifteen days from the date of notice in which to answer the complaint. My first notice was dated April 20, 2012. *Please let me know that you have received this communication and when I might expect your answer*.

(Emphasis added).

Lexon asserts that these communications were equivocal and failed to amount to proper notice that Berkeley County was providing the agreed upon fifteen-day notice that it was withdrawing its consent to Lexon having an indefinite time within which to answer the complaint. Berkeley County contends that its three communications demonstrated that Berkeley County "intended to move forward with this lawsuit and expected Lexon to file its answer."

The primary difficulty demonstrated by the foregoing events in this case is the parties' combined failure to comply with the West Virginia Rules of Civil Procedure. Rule 6(b) provides the proper method of extending the time for the filing of a defendant's answer:

*Enlargement*. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, all the parties to the action, by written stipulation filed with the court, may agree at any time

18

to a different period, or the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them.

W. Va. R. Civ. P. 6(b).  Instead of complying with the procedure set out in Rule 6(b), the parties instead engaged in an unclear and poorly executed agreement to indefinitely extend the time afforded to Lexon for answering the complaint.  Although we find that the parties improperly sought to extend the time frame for filing an answer to the complaint, the parties will be bound by their agreement for the purposes of this appeal.

In ruling on the propriety of the default under the unique circumstances herein presented, we are mindful that, "'[a]lthough courts should not set aside default judgments or dismissals without good cause, it is *the policy of the law to favor the trial of all cases on their merits.*' Syl. Pt. 2, *McDaniel v. Romano*, 155 W. Va. 875, 190 S.E.2d 8 (1972)."  Syl. pt. 6, *Gray v. Mena*, 218 W. Va. 564, 625 S.E.2d 326 (2005) (emphasis added).  Based upon the language in Berkeley County's communications quoted above, and the policy favoring trial of all cases on their merits, we agree with Lexon that Berkeley County failed to provide clear notice that it was withdrawing its consent to give Lexon an indefinite time within which to answer Berkeley County's complaint.  Berkeley County merely stated that it would

19

"appreciate [Lexon's] answer at your earliest convenience," and asked to be informed of when it "might expect [Lexon's] answer." These ambiguous communications fail to clearly articulate an intent on the part of Berkeley County to seek default in the event that Lexon's answer was not forthcoming. Accordingly, Berkeley County's motion was improperly filed and should not have been granted.

## IV.

## CONCLUSION

Because we find that the damages sought in this case are not a "sum certain" as required by West Virginia Rule of Civil Procedure 55(b)(1), default judgment was improperly granted under that rule. In addition, we find that default was improperly entered under the unique circumstances of this case where the parties failed to follow the Rules of Civil Procedure pertaining to the extension of the time for filing an answer. Accordingly, we reverse the Circuit Court of Berkeley County's order of February 6, 2014, denying Lexon's motion to set aside default judgment, and remand this case for further proceedings.

Reversed and Remanded.

20