[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14075
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 8, 2012
JOHN LEY
CLERK

D. C. Docket No. 8:09-cv-00062-SDM-TBM


WESTCHESTER FIRE INSURANCE
COMPANY, a New York corporation,

Plaintiff-Counter-
Defendant-Appellee,


versus

CITY OF BROOKSVILLE,

Defendant-Counter-
Claimant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 8, 2012)


Before EDMONDSON and PRYOR, Circuit Judges, and BOWDRE,* District Judge.

_____

*Honorable Karon O. Bowdre, United States District Judge for the Northern District of Alabama, sitting by designation.

PER CURIAM:

This state-law case is about performance bonds and an abandoned single-family housing development in the City of Brooksville, Florida (the "City"). The City is attempting to recover $5.3 million from the Westchester Fire Insurance Company ("Surety"), which issued two performance bonds to indemnify the City from damage if the developer failed to complete agreed-upon infrastructure for the development. The developer filed for bankruptcy and failed to begin construction of the agreed-upon infrastructure; this dispute followed. Surety sought a declaratory judgment that the City is not entitled to the proceeds of the performance bonds; the City counterclaimed to collect the face value of the bonds.

On appeal from the district court's grant of summary judgment for Surety, the City argues that Surety is required to pay the City the full value of the bonds even if no construction on the development began. We conclude that the bonds impose no obligation on Surety to pay the City to complete the agreed-upon infrastructure improvements because no construction of the pertinent

improvements commenced. We affirm the district court's granting summary judgment for Surety.[1]

# I. BACKGROUND

Levitt and Sons of Hernando County ("Levitt"), a developer, purchased property in Brooksville and planned to develop a five-phase, single-family residential subdivision known as the "Cascades." Levitt and the City entered into a Utility Services Agreement, in which the City agreed to provide, among other things, potable water and sewer services to the Cascades. As part of the Utility Services Agreement, Levitt and the City agreed to a Development Schedule, which includes five phases for development of the Cascades. Construction of Phase One of the Development Schedule is nearly completed. This case is about Phase Two. The three remaining phases of the Cascades development have not been platted, and no plans exist for development of these phases.

---

[1] We deny the City's motion to certify questions of state law to the Supreme Court of Florida.

The City approved Levitt's final plan for the construction of Phase Two (the "plat"), and the plat was recorded in March 2006. The plat requires Levitt (or its successors) to construct certain improvements on Phase Two, which would be necessary for the City to supply utility services promised to future residents of Phase Two. These improvements include storm lines, potable water lines, reclaimed water lines, sanitary sewer lines, earthwork, and roadways.

The City, before approving a final plat, must "be satisfied that all improvements . . . have been constructed." CITY OF BROOKSVILLE CODE OF ORDINANCES § 129-3(c) (2006). But, "[i]n lieu of completion of the improvements, a bond . . . shall be furnished" equal to the cost of constructing the improvements. Id. For Phase Two, in lieu of completing the improvements before obtaining the City's approval of a final plat (and in accordance with the Brooksville Ordinance), Levitt furnished a bond to secure completion of the improvements.[2]

Before beginning construction of the Phase Two improvements, and before the estimated completion date stated on the bonds, Levitt petitioned for

_____

[2] Levitt commissioned Coastal Engineering to determine the construction cost of the Phase Two improvements and the value of the bonds Levitt would need to post. Based on Coastal Engineering's estimate, Levitt asked Surety to issue two performance bonds on behalf of Levitt and in favor of the City as security for Levitt's obligation to complete the improvements. For Phase Two the total value of the two bonds delivered by Levitt (as principal) and Surety to the City (as obligee) is $5,366,454.75.

4

bankruptcy and abandoned the Cascades.  When Levitt filed for bankruptcy, Levitt had removed some trees and cleared some of the land for Phase Two.  Levitt had begun no construction of the pertinent improvements, marketed and sold no lots in Phase Two, and built no home in Phase Two.[3]

Shortly after Levitt abandoned the Cascades, the City demanded payment from Surety on the surety bonds.  Surety denied payment.  The City then sued Surety in state court to foreclose the bonds; the parties later voluntarily dismissed the state-court action and agreed to a one-year forbearance to allow for the possibility that a new developer would purchase the Cascades and begin construction.  On the day the City planned to terminate the forbearance agreement, Surety filed this suit in district court for a declaratory judgment of its obligations to the City.  The City counterclaimed to foreclose on the bonds.[4]

The Phase Two property remains undeveloped land in a vegetated state.  A principal of CaSHP2 stated that, if the City does not recover on the bonds, "there

---

[3] The parties stipulated that "there are no disputes of fact and that the claims should be decided by the Court as a matter of law." (emphasis in original).  We have seen in the record a mention of a box culvert between Phase One and Phase Two.  From the record we cannot say that this culvert is a Phase Two improvement of any kind; moreover, we cannot conclude that the culvert represents commencement of a substantial (as opposed to de minimis) construction of the pertinent Phase Two improvements.

[4] Before this case was filed, Key Bank purchased the property at a foreclosure sale and later assigned the Cascades to OREO Corp.  While this case was pending in the district court, ownership of Phase Two of the Cascades changed hands twice.  In May 2009 OREO sold the Cascades to Kolter Group, LLC ("Kolter").  Kolter later transferred title to Phase Two to CaSHP2, LLC.

is no chance that the improvements will even be started in the foreseeable future"

and, if the City does recover on the bonds, there is "maybe, [a] 50-50" chance that

development will begin on a rolling basis "between 2013 and 2017."  The City has

neither attempted to construct the pertinent improvements nor solicited bids to

establish a current expected cost of constructing the improvements nor asked

CaSHP2 to construct the improvements.[5]  No City resident has requested the

construction of the improvements, and no existing home requires the utility

services that would be provided by the improvements.

The district court granted summary judgment in favor of Surety and against

the City, reasoning, among other things, that Surety's obligation to pay the City on

the bonds is subject to an implied condition that payment for the improvements is

required only if construction commences.

## II.  DISCUSSION

A surety bond is a contract guaranteeing performance of an obligation owed

by another party; we interpret surety bonds according to the standards that govern

---

[5] The City expressly relieved OREO and its successors of the obligation to construct the pertinent improvements; CaSHP2's acquisition of Phase Two was expressly conditioned on the City's agreement that CaSHP2 would not be obligated to install the Phase Two improvements.

construction of contracts in general and according to the intent of the parties.  See

Amer. Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So. 2d 195, 197 (Fla.

1992).  The surety bonds in this case read, in part, this way:

> [T]he Developer has agreed to complete certain on-site and/or off-site improvements in accordance with the Project Engineer's Certified Cost Estimate for Completion of Improvements . . . such that if the Developer promptly and faithfully completes the improvements as required by the City Approvals on or before the Estimated Date of Completion, then this obligation will be null and void; otherwise it will remain in full force and effect, subject only to the following conditions:
>
> . . . .
>
> 2.  If the Developer fails to complete the required Improvements in accordance with the City Approvals, applicable regulations and this agreement, [Surety] must, upon written demand by the City, promptly pay over to the City the unreleased portion of the bond so that the City, or its agent, can complete the unfinished improvements in accordance with the terms and conditions of the City Approvals.

Pursuant to the City's ordinance, and before the plat was recorded, Levitt

purchased the bonds; Surety then issued the bonds.  We construe the bonds in the

light of that ordinance.  See Glades Cnty. v. Detroit Fid. & Sur. Co., 57 F.2d 449,

451 (5th Cir. 1932) ("The bond is plainly given under the [Florida] statute and to

be construed in the light of it.").  The City, per its ordinance, conditions plat

approval on either the presence of already-completed improvements or a bond

furnished by the developer equal to the cost to construct the improvements.

7

As required by the City ordinance, Levitt furnished the performance bonds before the City's recording of the plat. For the City, a purpose of the bonds was to ensure that no future resident of Phase Two owns a home without access to City utilities. For Levitt, the purpose of the bonds was to be allowed to move forward with the development of Phase Two. These purposes no longer apply to this case. No lots have been marketed or sold; so no future resident of Phase Two requires the utilities services the improvements would provide. No construction of improvements has been started; so no construction of improvements can be completed, that is, finished.

The City cannot "complete the unfinished improvements" -- as the bonds say -- because no unfinished improvements are present in this case: no improvements were started. The wording of the bonds and the requirements of the City ordinance compel the conclusion for us that the bonds were not issued to punish Levitt or to enrich the City, but to allow the City to complete improvements once a developer starts them. For these kinds of bonds, this point is to be highlighted: the City is not to be left with the expense and mess of half-finished improvements once work on the improvements has started. Surety guaranteed that the improvements would be finished if started but did not guarantee that the improvements would be both started and finished.

We agree with the district court that these bonds are subject to an implied condition that payment for completion of the improvements is required only if Levitt started construction of the pertinent improvements. Cf. River Vale Planning Bd. v. E & R Office Interiors, Inc., 575 A.2d 55, 59-60 (N.J. Super. Ct. App. Div. 1990) (installation of improvements agreed to as a condition of site plan approval was subject to an implied condition that the improvements were required only if the developer proceeded with the project that was approved).

This implied condition was not fulfilled: no construction of the pertinent Phase Two improvements began. Surety's obligation to pay the City the amount of the bonds has not been triggered.

III.  CONCLUSION

Surety has no obligation to pay the City the face value of the bonds to complete construction of improvements that never began. The City is entitled to no recovery on these bonds; the grant of summary judgment in this case is affirmed.

AFFIRMED.