IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 20-0043

_____

FILED
**November 6, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL.
MONSTER TREE SERVICE, INC.,
Petitioner

v.

THE HONORABLE JEFFREY D. CRAMER,
JUDGE OF THE CIRCUIT COURT
OF MARSHALL COUNTY, and DAVID S. DUVALL,
Respondents

And

_____

No. 20-0044

_____

STATE OF WEST VIRGINIA EX REL.
MONSTER FRANCHISE, LLC,
Petitioner

v.

THE HONORABLE JEFFREY D. CRAMER,
JUDGE OF THE CIRCUIT COURT
OF MARSHALL COUNTY, and DAVID S. DUVALL,
Respondents

_____

ORIGINAL PROCEEDINGS IN PROHIBITION

WRITS GRANTED

_____

Submitted: September 22, 2020
Filed: November 6, 2020

Ashley Hardesty Odell, Esq.
Bowles Rice LLP
Morgantown, West Virginia
William L. Burner, Esq.
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Petitioner Monster Tree
Service, Inc.

Ancil G. Ramey, Esq.
Steptoe & Johnson PLLC
Huntington, West Virginia
Bradley Shafer, Esq.
Mintzer, Sarowitz, Zeris, Ledva &
Meyers, LLP
Wheeling, West Virginia
Counsel for Petitioner Monster Franchise,
LLC

Michelle Marinacci, Esq.
Christopher M. Turak, Esq.
Gold Khourey & Turak, L.C.
Moundsville, West Virginia
Counsel for Respondent David S. Duvall

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2. "When a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right regardless of the existence of other remedies." Syl. Pt. 10, *Jennings v. McDougle*, 83 W. Va. 186, 98 S.E. 162 (1919).

3. "When a defendant files a motion to dismiss for lack of personal jurisdiction under *W.Va.R.Civ.P.* 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence." Syl. Pt. 4, *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997).

i

4. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 5, in part, *Div. of Justice & Cmty. Servs. v. Fairmont State Univ.*, 242 W. Va. 489, 836 S.E.2d 456 (2019).

5. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 4, in part, *Young v. Apogee Coal Co., LLC*, 232 W. Va. 554, 753 S.E.2d 52 (2013).

6. "In order that substituted service of original process shall have the effect of actual service upon the party in person, the return must show that all essential provisions of the statute authorizing such substituted service have been strictly complied with." Syl. Pt. 3, *Jones v. Crim*, 66 W. Va. 301, 66 S.E. 367 (1909).

7. "In analyzing 'good cause' for purposes of motions to set aside a default, the trial court should consider: (1) the degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; (4) the degree of intransigence on the part of the defaulting party; and (5) the reason for the defaulting party's failure to timely file an answer." Syl. Pt. 5, in part, *Groves v. Roy G. Hildreth & Son, Inc.*, 222 W. Va. 309, 664 S.E.2d 531 (2008).

**Armstead, Chief Justice:**

In these related proceedings, Monster Tree Service, Inc., ("**Monster, Inc.**") and Monster Franchise, LLC, ("**Monster Franchise**") ask the Court to issue writs of prohibition setting aside defaults that were entered against them in the Circuit Court of Marshall County.[1] They contend that the circuit court lacked personal jurisdiction over them and should have granted their motions to set aside their defaults.

Based on the record before us, the arguments of the parties, and the applicable law, we find that the circuit court erred in refusing to set aside the defaults entered against Monster, Inc., and Monster Franchise. Accordingly, we grant the writs of prohibition, vacate the circuit court's orders refusing to set aside these defaults, and remand these cases to the circuit court for further actions consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent David S. Duvall was injured on November 17, 2017, when he fell from a tree. At the time, Mr. Duvall was working for Monster Tree Service of the Upper Ohio Valley, Inc. ("**Monster UOV**"). Though Monster UOV is an Ohio corporation, it has its principal place of business in Wheeling, West Virginia, and Mr. Duvall sustained his injuries in Marshall County, West Virginia. According to Mr. Duvall, his damages include medical bills that "approach" one million dollars.

---

[1] Because these petitions stem from the same civil action and share many of the same relevant facts, we answer them in a single opinion.

On September 14, 2018, Mr. Duvall's attorney wrote to "Monster Tree Service," asking it to preserve evidence. The attorney directed the letter to the attention of Joshua Skolnick, who—according to the record—is the president of Monster, Inc., and the organizer of Monster Franchise. He also describes himself on social media as the "CEO/Founder" of "Monster Tree Service," a title that he purports to have held since 2008. Monster, Inc., is a Pennsylvania corporation formed in 2005; Monster Franchise is a Pennsylvania limited liability company formed in 2011.[2] The record does not indicate that either Monster, Inc., or Monster Franchise is registered to do business in West Virginia.

On October 1, 2018, counsel for Monster Franchise replied to say that its relationship to its franchisees is governed by a franchise agreement that allows franchisees "to use the 'Monster Tree Service' mark and business system[.]" Counsel for Monster Franchise also advised that Mr. Duvall was employed by a franchisee's corporation—Monster UOV—and that Monster Franchise had nothing to do with the accident.

On February 8, 2019, Mr. Duvall sued Monster UOV and Monster, Inc., in Marshall County Circuit Court. Mr. Duvall tried to serve Monster, Inc., via the West Virginia Secretary of State, but the record does not show that the mailing from the Secretary of State to Monster, Inc., was ever delivered.

Counsel for Monster Franchise contacted Mr. Duvall's counsel again on April 4, 2019. This time, counsel also wrote on behalf of Monster, Inc. The letter reprised

---

[2] Mr. Skolnick is also the president of Monster LandCare, Inc., a Pennsylvania corporation formed in 2006 that owns "Monster Tree Service" and other related trademarks.

earlier arguments and demanded that Mr. Duvall dismiss his suit. The letter further advised that Monster, Inc., "operates a Monster Tree business solely within Eastern Pennsylvania and is not involved in any capacity with the Monster Franchise system and has never operated in West Virginia."

Nevertheless, on April 16, 2019, Mr. Duvall filed an amended complaint that names Monster UOV, Monster, Inc., and Monster Franchise as defendants. In his amended complaint, Mr. Duvall alleges that Monster, Inc., and Monster Franchise provide opportunities for people to operate a franchise business of trimming or cutting trees "under the Monster name with Monster marketing and training support" and that Monster UOV is one of their franchisees. He accuses Monster, Inc., and Monster Franchise of maintaining a "unified advertising website" with Monster UOV that "solicits . . . residential and commercial customers in West Virginia" and of making advertising claims that created a duty to monitor and train Monster UOV. Those advertising claims, according to Mr. Duvall, include assurances that Monster, Inc., "and/or" Monster Franchise provide: (1) "personal, onsite training at [the franchisee's] location[,]" (2) "training on their proprietary systems and processes for every part of the tree trimming/cutting business, including . . . day-to-day operations[,]" (3) "training on safety, equipment usage, operations and daily management[,]" and (4) "the right to purchase equipment through Monster accounts." Mr. Duvall alleges that, despite these assurances to the public, Monster, Inc., and Monster Franchise failed to ensure that Monster UOV was both properly trained and properly equipped to safely engage in the business of trimming or cutting trees.

3

The following day, April 17, 2019, Mr. Duvall's attorney replied to the April 4, 2019 letter from counsel for Monster, Inc., and Monster Franchise. Mr. Duvall's attorney contended that Mr. Duvall had a good faith basis for suing Monster, Inc., and Monster Franchise and refused to dismiss the suit. Mr. Duvall's attorney enclosed a courtesy copy of the Amended Complaint and advised that "[s]ervice of the same is being made in accordance with applicable law."

On April 22, 2019, the West Virginia Secretary of State accepted service on behalf of Monster, Inc. The Secretary of State duly forwarded the amended complaint to Monster, Inc., and, according to the United States Post Office, *someone* signed for the mailing. Though the handwriting is not clear, the signature appears to say, "MTS"; the handwritten address says "1861 LSR."[3]

Also on April 22, 2019, the West Virginia Secretary of State accepted service on behalf of Monster Franchise. However, when the Secretary of State forwarded the amended complaint to Monster Franchise, this mailing was returned. Handwritten remarks on the mailing say, "NOT AT THIS ADDRESS" and "RETURN TO SENDER." Printed remarks from the United States Post Office say, "RETURN TO SENDER" and "UNABLE TO FORWARD."

On May 31, 2019, Mr. Duvall moved for default. According to the attached affidavit of counsel, all defendants were served via the West Virginia Secretary of State,

---

[3] We note that, according to the Pennsylvania Secretary of State, Monster, Inc.'s registered office address was 1861 Lower State Road, Doylestown, PA 18901.

and all failed to answer. Regarding Monster Franchise, Mr. Duvall's counsel acknowledged that "the certified mail . . . had been returned as undeliverable by virtue of a handwritten return to sender, not at this address notation," yet she contended that the certified mailing was sent to the proper address according to the Pennsylvania Secretary of State. She also asserted that Monster Franchise "has actual notice of the Amended Complaint by virtue of service upon [Monster, Inc.], a related company with shared officers."

Five days later, on June 5, 2019, the circuit court entered defaults against all defendants. On June 24, 2019, Monster, Inc., moved to set aside the default, arguing that less than 20 days had passed since the default was entered and that Monster, Inc., had several meritorious defenses, including insufficient service of process and lack of personal jurisdiction. In support of its motion, Monster, Inc., filed an affidavit from Joshua Skolnick. According to Mr. Skolnick, the signature on the return of service was not his or that of "anyone else authorized to accept service of lawful process on behalf of Monster[, Inc.]" He claimed that he had "inquired of persons who usually receive and receipt mail for Monster[, Inc.,] and the signature on the return of service is not identifiable."

Regarding Monster, Inc.'s business activities, Mr. Skolnick asserted that Monster, Inc., is not affiliated "in any way" with Monster UOV, that Monster, Inc., "is a Pennsylvania tree-cutting company that operates solely in Pennsylvania[,]" and that Monster, Inc., "uses the Monster Tree Service trademark pursuant to a licensing agreement." Mr. Skolnick's affidavit further provides that Monster, Inc., caused no

5

tortious injury, conducts no business, provides no goods or services, solicits no business, engages in no persistent course of conduct, derives no substantial revenue from goods or services sold, and maintains no offices, agents, or employees in West Virginia. The affidavit further denies that Monster, Inc., operates or contributes "in any way" to the Monster Tree Service website or advertises itself as an entity qualified to train companies about tree removal.

Mr. Duvall responded to Monster, Inc.'s motion on September 6, 2019. Mr. Duvall argued that Monster, Inc., was properly served and that, based on plausible inferences from numerous representations to the public—which he endeavored to show through attachments—Monster, Inc., is actually "the parent company and in control of all franchising operations, including training of franchisees." He argued that, based on Monster, Inc.'s published activities, he had made a prima facie case for jurisdiction. He also accused Monster, Inc., of "significant intransigence" and argued that Monster, Inc., had not shown good cause to set aside its default.

Monster Franchise moved to set aside its default on October 15, 2019, arguing that the circuit court lacked jurisdiction due to ineffective service and that good cause existed to set aside its default. In support of its claims, Monster Franchise attached a second affidavit from Mr. Skolnick. According to Mr. Skolnick, Monster Franchise was not at the Norristown Road address where the Secretary of State mailed the amended complaint; it had not been there for several years and it did not receive service of the amended complaint.

Regarding Monster Franchise's business activities, Mr. Skolnick acknowledged that it does provide franchise opportunities and that Monster UOV "is one of the franchise locations." However, he asserted that Monster Franchise did not participate in Monster UOV's "day-to-day activities" and never possessed any of the safety equipment that was used at the time of Mr. Duvall's accident.

In response, Mr. Duvall argued that the mailing was sent to the correct address according to records maintained by the Pennsylvania Secretary of State and that Mr. Skolnick did not file an address change with the Pennsylvania Secretary of State until three days before he signed his affidavit. According to Mr. Duvall, "someone at the Norristown Road address refused delivery by handwriting on the envelope 'not at this address' 'return to sender.'" Mr. Duvall blamed Monster Franchise for these handwritten remarks and alleged that, by making them, Monster Franchise "effectively refused service." He further claimed that Monster Franchise failed to show good cause for its default.

On December 18, 2019, the circuit court entered separate orders denying Monster, Inc.'s and Monster Franchise's motions to set aside their defaults. The circuit court found that both defendants had notice of the action and could have filed motions under Rule 12(b) of the West Virginia Rules of Civil Procedure[4] to preserve their

---

[4] W. Va. R. Civ. P. 12(b) [1998] provides that:

(continued . . .)

jurisdictional arguments. The circuit court found that Monster, Inc.'s representations to the public "directly contradicted" Mr. Skolnick's claims that Monster, Inc., had no connections to West Virginia, and Mr. Duvall had made a prima facie showing of personal jurisdiction. According to the circuit court, both Monster, Inc., and Monster Franchise had been properly served via the Secretary of State pursuant to W. Va. Code §§ 31D-15-1501(e) (2008)[5] and 56-3-33(c) (2017).[6] The circuit court further held that the mailing to

Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

. . . .

(2) lack of jurisdiction over the person,

. . . .

(5) insufficiency of service of process . . . .

[5] W. Va. Code § 31D-15-1501(e) (2008) provides that

[a] foreign corporation's making of a contract, the committing of a manufacture or sale, offer of sale or supply of defective product . . . is deemed to be the agreement of that foreign corporation that any notice or process served upon, or accepted by, the Secretary of State in a proceeding against that foreign corporation arising from, or growing out of, contract, tort or manufacture or sale, offer of sale or supply of the defective product has the same legal force and validity as process duly served on that corporation in this state.

[6] W. Va. Code § 56-3-33(c) (2017) provides that

(continued . . .)

Monster, Inc., was effective because someone signed for it; the mailing to Monster

Franchise was effective because it was refused. The court further determined that both

defendants were guilty of "extreme intransigence" and that both failed to show good cause

for their defaults. Therefore, they were entitled to no relief.

---

[s]ervice shall be made by leaving the original and two copies of both the summons and the complaint, and the fee . . . with the Secretary of State, or in his or her office, and such service shall be sufficient upon such nonresident: *Provided,* That notice of such service and a copy of the summons and complaint shall forthwith be sent by registered or certified mail, return receipt requested, . . . by the Secretary of State to the defendant at his or her nonresident address and the defendant's return receipt signed by himself or herself or his or her duly authorized agent or the registered or certified mail so sent by the Secretary of State which is refused by the addressee and which registered or certified mail is returned to the Secretary of State . . . showing thereon the stamp of the post-office department that delivery has been refused. After receiving verification from the United States Postal Service that acceptance of process, notice or demand has been signed, the Secretary of State shall notify the clerk's office of the court from which the process, notice or demand was issued by a means which may include electronic notification. If the process, notice or demand was refused or undeliverable by the United States Postal Service the Secretary of State shall create a preservation duplicate from which a reproduction of the stored record may be retrieved which truly and accurately depicts the image of the original record. . . . If any defendant served with summons and complaint fails to appear and defend within thirty days of service, judgment by default may be rendered against him or her at any time thereafter. . . .

This statute was amended in 2020, but the amendments are not relevant to this case.

Monster, Inc., and Monster Franchise filed these petitions for writs of prohibition in order to challenge the circuit court's December 18, 2019 orders.

## II.  STANDARD OF REVIEW

We have held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court [1] has no jurisdiction or [2] having such jurisdiction exceeds its legitimate powers.  *W. Va. Code*, 53-1-1."  Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

> [w]hen a petition raises a jurisdictional challenge, we must determine . . . whether it is jurisdictional in the sense of requiring a decision upon facts or a decision upon a pure question of law.  If it rests upon a determination of fact, prohibition will not lie.  If, however, the challenge rests upon the determination of a question of law, prohibition will lie if the trial court has exceeded its jurisdiction or usurped a jurisdiction that in law does not exist.  Because the question is one of law, we apply a *de novo* standard of review.

*State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 341, 835 S.E.2d 579, 585 (2019) (citations, internal quotation marks, and footnote omitted).  However, "[o]stensible findings of fact, which entail application of law or constitute legal judgments that transcend ordinary factual findings, must be reviewed *de novo*."  *State ex rel. Ford Motor Co. v. McGraw*, 237 W. Va. 573, 580, 788 S.E.2d 319, 326 (2016).

A different standard applies when a petitioner challenges a circuit court's exercise of its authority:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). As we have often noted, "[t]hese factors are [just] general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue." *Id*. Not all factors must be present, but "the third factor, the existence of clear error as a matter of law, should be given substantial weight." *Id*. With these standards in mind, we will consider the parties' arguments.

## III. ANALYSIS

Monster, Inc., and Monster Franchise challenge both the circuit court's jurisdiction to enter their defaults and the circuit court's refusal to set them aside. Whether the circuit court had personal jurisdiction is a threshold issue; therefore, we consider it first. Syl. Pt. 10, *Jennings v. McDougle*, 83 W. Va. 186, 98 S.E. 162 (1919) ("When a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right regardless of the existence of other remedies.").

## A. Statutory Jurisdiction

As the circuit court noted, West Virginia's Long-Arm Statute provides that when a nonresident or its duly authorized agent engages in certain activities in the State of West Virginia, the nonresident, by virtue of those activities, appoints the West Virginia Secretary of State as its attorney for service of process. W. Va. Code § 56-3-33(a). By statute, a "nonresident" is "any person . . . who is not a resident of this state . . . and among others includes a nonresident firm, partnership or corporation . . . ." W. Va. Code § 56-3-33(e)(2). Such an entity is subject to service of process on the West Virginia Secretary of State if its activities include "[t]ransacting any business in this state"; "[c]ontracting to supply services or things in this state"; "[c]ausing tortious injury by an act or omission in this state"; and "[c]ausing tortious injury in this state by an act or omission outside this state" when the nonresident "derives substantial revenue from goods used or consumed or services rendered in this state[.]" W. Va. Code § 56-3-33(a).

The circuit court also invoked W. Va. Code § 31D-15-1501. Section 1501 provides that a foreign corporation is "transacting business" in this state if it, among other things, "makes a contract to be performed, in whole or in part, by any party thereto in this state[.]" W. Va. Code § 31D-15-1501(d). A corporation that makes such contract agrees "that any notice or process served upon, or accepted by, the Secretary of State in a proceeding against that foreign corporation arising from, or growing out of, contract[ or] tort . . . has the same legal force and validity as process duly served on that corporation in this state." W. Va. Code § 31D-15-1501(e).

12

Monster, Inc., denies that it has engaged in any of these activities. According to Mr. Skolnick's affidavit, Monster, Inc., has nothing to do with Monster UOV and nothing to do with West Virginia. It is merely a Pennsylvania company that cuts Pennsylvania trees, and it does business under the "Monster Tree Service" trademark only because it has a license to do so.

Mr. Duvall's amended complaint paints an entirely different picture. According to him, Monster, Inc.—with Monster Franchise—is actively involved in the franchise business, providing "personal, onsite training" *at franchisee locations*, which presumably includes Monster UOV's location in West Virginia. Mr. Duvall has also produced a variety of online materials showing that an entity that calls itself "Monster Tree Service"—and whose "Founder and CEO" is Mr. Skolnick—purports to be the "first and only national franchise brand serving the . . . tree care industry." These online materials also show that this "Monster Tree Service" further purports to provide extensive training for franchisees, including "one week of classroom and hands-on training in Fort Washington, Pennsylvania, followed by *another full week of personal, onsite training at your location*." (Emphasis added.) This training allegedly includes "[s]afety and [e]quipment [u]sage" and "personal, one-on-one assistance with hiring, sales, equipment, scheduling and more, followed by quarterly [f]ield [s]upport from then on." Franchisees also acquire "the right to purchase . . . exclusive nationally recognized and branded marketing products as well as equipment, vehicles, and software, internet and e-mail

13

marketing services, . . . all at discounted . . . prices." Online materials also show that a "Monster Tree Service" franchise costs as much as $49,500 plus ongoing royalties.

If Monster, Inc., had filed a motion to dismiss the amended complaint under Rule 12(b)(2) of the Rules of Civil Procedure for lack of personal jurisdiction, the question before the circuit court would have been whether Mr. Duvall "has made a *prima facie* showing of personal jurisdiction[.]" *Ford Motor Co.*, 237 W. Va. at 577, 788 S.E.2d at 323, syl. pt. 6, in part (quoting Syl. Pt. 4, *State ex rel. Bell Atlantic–W. Va., Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997)). The circuit court would have made this determination based on "the pleadings, affidavits and other documentary evidence" before the court and would have "view[ed] the allegations in the light most favorable to . . . [Mr. Duvall], drawing all inferences in favor of jurisdiction." *Id*. This was, in fact, the standard and the method that the circuit court applied when it determined that Monster, Inc., had engaged in activities that "statutorily appointed the West Virginia Secretary of State as its agent for service of process[.]"

From the record, considerable uncertainty surrounds the identity of the "Monster Tree Service" that purports to engage in a wide variety of training activities, activities that include a week of training *onsite* at a franchisee's location and other activities that supply a basis for statutory jurisdiction. However, we do know—thanks to Mr. Skolnick's affidavit—that Monster, Inc., has a license to do business under the "Monster Tree Service" trademark, and we know that Mr. Skolnick, who bills himself as the "CEO/Founder" of "Monster Tree Service," is also the president of Monster, Inc. We also

note that, according to the record, the whymonster.com website lists seven "locations" where "Monster Tree Service" operates. Every location is listed as "Monster Tree Service of [Place Name]," such as "Monster Tree Service of the Upper Ohio Valley." None of those locations, however, is simply "Monster Tree Service" or "Monster Tree Service, Inc."

Accordingly, although we do not find that Mr. Duvall has conclusively proven that Monster, Inc., is the "Monster Tree Service" that purports to provide extensive franchisee training, we do conclude that, at this early stage in the proceedings, it was enough for Mr. Duvall to present prima facie evidence that Monster, Inc., is "Monster Tree Service" for purposes of establishing service of process under W. Va. Code § 56-3-33(a) and W. Va. Code § 31D-15-1501(e). We have previously held that:

> When a defendant files a motion to dismiss for lack of personal jurisdiction under *W.Va.R.Civ.P.* 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

*Bell Atlantic*, 201 W. Va. at 404, 497 S.E.2d at 757, syl. pt. 4. We find that Mr. Duvall has met this standard.[7]

### B. Service of Process

### *Service of Process on Monster, Inc.*

The question then becomes whether Mr. Duvall's service upon the West Virginia Secretary of State was effective. The Long Arm Statute, which provides for service of process on the Secretary of State, requires the Secretary of State to forward notice of such service and a copy of the summons and complaint to the defendant at his or her nonresident address by registered or certified mail, return receipt requested. W. Va. Code § 56-3-33(c). A like requirement applies when a foreign corporation is "doing or transacting business in this state without having been authorized to do so" and the "action or proceeding aris[es] from activities described in [W. Va. Code § 31D-15-1501.]" W. Va. Code § 31D-15-1510(e) (2008). Section 1510 requires the Secretary of State to "transmit one copy of the process or notice by registered or certified mail, return receipt requested . . . to the corporation at the address of its principal office[.]" *Id.*

"It is a well-established principle of law that a letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee. This

---

[7] We note that the circuit court also found jurisdiction over Monster, Inc., "to the extent" that it "exercises substantial control over either Monster UOV or Monster Franchise[.]" This determination was based on the principle that "formal separate corporate structures will not prevent the assertion of jurisdiction over the non-resident corporation" when "the parent and its subsidiary operate as one entity[.]" *Bell Atlantic*, 201 W. Va. at 404, 497 S.E.2d. at 757, syl. pt. 5, in part (quoting Syl. Pt. 2, *Norfolk Southern Ry. Co. v. Maynard,* 190 W.Va. 113, 437 S.E.2d 277 (1993)).

16

presumption is especially true when the delivery is by certified mail." *Dunn v. Watson*, 211 W. Va. 418, 421, 566 S.E.2d 305, 308 (2002) (internal quotation marks and citation omitted). The law further presumes that, when a person signs for a certified mailing, he or she has authority to do so. "[A] rebuttable presumption of valid service of process arises when a return receipt for certified mail is signed, and that the signator, if not the addressee, . . . acted as the agent of the addressee authorized to accept service in the absence of proof to the contrary." *Monster Heavy Haulers, LLC v. Goliath Energy Services, LLC*, 2016 ND 176, ¶ 17, 883 N.W.2d 917, 924; *see also State ex rel. Yahn Elec. Co. v. Baer*, 148 W. Va. 527, 532–33, 135 S.E.2d 687, 690 (1964) ("There is a presumption that registered mail was delivered and that the person who signed the receipt for such mail had the authority to do so.").

This rule is based on fairness and common sense. As the *Monster Heavy Haulers* court explained, "the burden of proof ordinarily rests on the party who possesses the facts on the issue in dispute." *Id.*, 2016 ND 176, ¶ 17, 883 N.W.2d at 925 (quoting *Reisenauer v. Schaefer,* 515 N.W.2d 152, 156 (N.D.1994) which was quoting *In re Mt. Pleasant Bank & Trust Co.,* 455 N.W.2d 680, 685 (Iowa 1990)). "It imposes no great burden on a defendant, who possesses knowledge of the relevant facts, to determine whether a particular individual was authorized to accept service of process on the defendant's behalf." *Monster Heavy Haulers*, 2016 ND 176, ¶ 17, 883 N.W.2d at 925. In addition, "[a] contrary rule 'could result in much uncertainty and potentially allow great mischief.'" *Id.* (quoting *Dunn*, 211 W. Va. at 421, 566 S.E.2d at 308).

17

Both the presumption of delivery and the presumption of authority may be rebutted if the defendant produces clear and convincing evidence to the contrary. *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1137 (4th Cir. 1984) (holding that "clear and convincing" "evidence [is] required to overcome the presumption of receipt of certified mail correctly addressed and delivered to the home of the addressee[.]"); *see also O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (quoting *Hicklin v. Edwards,* 226 F.2d 410, 414 (8th Cir.1955) ("A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'")).

In this case, no one denies that the Secretary of State mailed the amended complaint to Monster, Inc., that the mailing was sent to the proper address, and that *someone* signed the return receipt. What Monster, Inc., denies is that the mailing was signed by a proper person. According to Mr. Skolnick, the signature on the return of service was unidentifiable and belongs to neither him nor "anyone else authorized to accept service of lawful process on behalf of Monster[, Inc.]" Monster, Inc., contends that this attempt at service was defective, therefore, because W. Va. Code § 56-3-33(c) requires signature by a "duly authorized agent[.]"[8]

---

[8] We note that this term "includes . . . a person who . . . usually receives and receipts for mail addressed to such nonresident." W. Va. Code § 56-3-33(e)(1). W. Va. Code § 31D-15-1510(e) contains a similar requirement: signature by "an agent or employee of the corporation[.]"

The circuit court concluded that Monster, Inc., has failed to effectively rebut prima facie evidence of effective service by strong and convincing evidence, and we agree. Monster, Inc., does not deny that it received the Secretary of State's mailing, nor does it successfully rebut the presumption that an authorized person—or an agent or employee of the corporation—signed for it. In his affidavit, Mr. Skolnick says that the signature on the return receipt does not belong to him or anyone else with authority to accept service of process, but then he says that, after checking with the "persons who usually receive and receipt mail[,]" the signature cannot be identified. Such assertions are not enough to rebut the presumption that Monster, Inc., received the mailing from the Secretary of State. They further do not effectively rebut the presumption that the person who signed the return receipt did so as Monster, Inc.'s duly authorized agent, W. Va. Code § 56-3-33(c), or as Monster, Inc.'s agent or employee, W. Va. Code § 31D-15-1510(e). *See Fed. Deposit Ins. Corp.*, 731 F.2d at 1138 (affirming the presumption when the defendant's affidavit asserted "that the signature on the receipt, 'Malin,' was not his, that he did not recognize the handwriting, and that he was not served with a copy of the summons and complaint."). For these reasons, we find that the circuit court did not err when it found statutory personal jurisdiction over Monster, Inc., pursuant to W. Va. Code § 56-3-33[9] and W. Va. Code § 31D-15-1501.

---

[9] We note that the circuit court's order sometimes refers to W. Va. Code § 56-3-3 (forms of writs and other process). From context, we believe this is a typographical error.

19

*Service of Process on Monster Franchise*

The circuit court's jurisdictional analysis for Monster Franchise focused on whether Monster Franchise "refused" the certified mailing from the West Virginia Secretary of State. This issue is dispositive, so we begin there.

As explained above, when the West Virginia Secretary of State accepts service of process for a nonresident defendant, the Long Arm Statute requires the Secretary of State to send "notice of such service and a copy of the summons and complaint" to the defendant "by registered or certified mail, return receipt requested[.]" W. Va. Code § 56-3-33(c). According to the statute, substitute service on the Secretary of State is not effective unless one of two things happens: (a) the defendant (or its "duly authorized agent") signs the return receipt or (b) the defendant refuses the mailing. *Id.*[10]

In this case, someone wrote, "NOT AT THIS ADDRESS" and "RETURN TO SENDER" on the mailing from the Secretary of State. The circuit court attributed these writings to Monster Franchise and found that, in making them, Monster Franchise "effectively refused service at its registered address."

*According to the statute*, whether a registered or certified mailing has been "refused" turns on one simple question: whether the United States Post Office has stamped the mailing as "refused." The statute is clear on this, providing that substitute service on the West Virginia Secretary of State:

---

[10] The circuit court order cites both W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501, but it focuses its analysis on W. Va. Code § 56-3-33. Our analysis is the same regardless of which statute applies.

20

shall be sufficient upon such nonresident: *Provided*, That notice of such service . . . shall forthwith be sent by registered or certified mail, return receipt requested, . . . by the Secretary of State to the defendant . . . and the defendant's return receipt signed by himself or herself or his or her duly authorized agent or the registered or certified mail so sent by the Secretary of State which is refused by the addressee and which registered or certified mail is returned to the Secretary of State, or to his or her office, *showing thereon the stamp of the post-office department that delivery has been refused*.

W. Va. Code § 56-3-33(c) (first emphasis in original, second emphasis added); *see also* W. Va. Code § 31B-1-111(c) (2017) and W. Va. Code § 31D-15-1510(e) (both stating that service of process is sufficient when a United States Postal Service "stamp" shows "that delivery . . . has been refused[.]"). Thus, according to the Legislature, the United States Post Office is the sole arbiter of whether a certified mailing is "refused," and that refusal must be indicated by a "stamp," not some handwritten remarks. There is no dispute in this case that the United States Postal Service stamped the words, "RETURN TO SENDER" and "UNABLE TO FORWARD" on the mailing to Monster Franchise, not "REFUSED," all of which makes Mr. Duvall's attempted service on Monster Franchise ineffective as a matter of law. "[S]ervice of process upon a foreign corporation through the Secretary of State is not successful when a registered or certified mailing is returned for any reason *other* than being accepted or refused." *Burkes v. Fas-Chek Food Mart Inc*, 217 W. Va. 291, 296, 617 S.E.2d 838, 843 (2005); *see also* Syl., *Crowley v. Krylon Diversified Brands*, 216 W. Va. 408, 607 S.E.2d 514 (2004).

Mr. Duvall attempts to avoid this conclusion by arguing that Monster Franchise had actual notice of his lawsuit and that the mailing was sent to the correct

21

address under Pennsylvania law. The circuit court accepted these arguments, but we are not at liberty to ignore the plain and unambiguous language of our West Virginia statute. "[S]ufficiency of process under the statute in question does not turn on issues of equity or negligence, but on statutory interpretation." *Crowley*, 216 W. Va. at 412, 607 S.E.2d at 518. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 5, in part, *Div. of Justice & Cmty. Servs. v. Fairmont State Univ.*, 242 W. Va. 489, 836 S.E.2d 456 (2019) (quoting Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970)). "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 4, in part, *Young v. Apogee Coal Co., LLC*, 232 W. Va. 554, 753 S.E.2d 52 (2013) (quoting Syl. Pt. 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999)). This "cardinal rule" applies to all words in a statute, even words as small and seemingly insignificant as "stamp."[11]

---

[11] We note that W. Va. R. Civ. P. 4 [2007] does not require a nonresident's refusal to be indicated by a United States Postal Service "stamp." W. Va. R. Civ. P. 4(d)(1) and (e)(2). However, constructive service on a nonresident pursuant to Rule 4 does not create personal jurisdiction. Syl. Pt. 4, *Leslie Equip. Co. v. Wood Res. Co.*, 224 W. Va. 530, 687 S.E.2d 109 (2009) ("In contrast to the legislative schema of West Virginia Code § 56–3–33 (Supp.2009), Rule 4 of the West Virginia Rules of Civil Procedure does not provide that constructive service on a nonresident defendant has the same force of law as personal service effected in state. As a result, *in personam* jurisdiction does not arise by operation of law when a nonresident defendant is constructively served with process pursuant to the provisions of Rule 4 of the West Virginia Rules of Civil Procedure."). A plaintiff who wants to effect personal jurisdiction over a nonresident defendant must comply with statutory processes.

22

When Mr. Duvall attempted substitute service on Monster Franchise under a West Virginia statute, he undertook a duty to fully comply with its provisions. "In order that substituted service of original process shall have the effect of actual service upon the party in person, the return must show that all essential provisions of the statute authorizing such substituted service have been strictly complied with." Syl. Pt. 3, *Jones*, 66 W. Va. at 301, 66 S.E. at 367. According to the undisputed facts in the record, Mr. Duvall failed in this duty. Therefore, we must conclude that his attempt at service on Monster Franchise was ineffective and, further, that the circuit court lacked jurisdiction to enter a default against Monster Franchise.

## C. Refusal to Set Aside Default as to Monster, Inc.

Monster, Inc., also contends that the circuit court committed clear error when it refused to set aside Monster, Inc.'s default. The West Virginia Rules of Civil Procedure provide that, when a defendant "has failed to plead or otherwise defend as provided by these rules, and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." W. Va. R. Civ. P. 55(a) [1998]. However, Rule 55 also allows a party's default to be set aside for "good cause shown[.]" W. Va. R. Civ. P. 55(c). Five factors apply when a court sets out to determine good cause:

> "In analyzing 'good cause' for purposes of motions to set aside a default, the trial court should consider: (1) the degree of prejudice suffered by the plaintiff from the delay in answering; (2) the presence of material issues of fact and meritorious defenses; (3) the significance of the interests at stake; (4) the degree of intransigence on the part of the defaulting party; and (5) the reason for the defaulting party's failure to timely file an

23

answer." Syllabus Point 4, *Hardwood Group v. LaRocco,* 219 W.Va. 56, 631 S.E.2d 614 (2006).

Syl. Pt. 5, in part, *Groves v. Roy G. Hildreth & Son, Inc.*, 222 W. Va. 309, 664 S.E.2d 531 (2008). We will consider each of the five factors in turn.

### *Degree of Prejudice*

The first factor in *Groves* requires us to examine "the degree of prejudice to the non-defaulting party if the default judgment is vacated." *Groves*, 222 W. Va. at 315, 664 S.E.2d at 537. Such "prejudice occurs when circumstances have changed since the entry of the default judgment which impairs the plaintiff's ability to prosecute its claim." *Id*. The circuit court found such prejudice in Mr. Duvall's inability to pursue his claims and in his inability to pursue discovery regarding the safety equipment in use when he was injured. Yet, in his response to this petition for writ of prohibition, Mr. Duvall makes no attempt to argue that his efforts to recover evidence have been hindered.

We find no evidence of substantial prejudice in the record. This case has moved relatively swiftly. Monster, Inc.'s answer was due in May 2019. By the middle of June 2019, Monster, Inc.'s default had been entered, and by the end of June 2019, Monster, Inc., had moved to set it aside. Such delay is hardly extraordinary or prejudicial. *Parsons v. Consol. Gas Supply Corp.*, 163 W. Va. 464, 473, 256 S.E.2d 758, 763 (1979) ("Here, the period of delay in answering was approximately one and one-half months, which we do not consider extraordinary, and plaintiff does not point to any factor of prejudice by reason of the delay."). Moreover, after the circuit court entered its order refusing to set aside the default in December 2019, Monster, Inc., filed this writ petition in January 2020.

24

Given the nature of Monster, Inc.'s defenses, we do not believe that this case would have proceeded any faster if Monster, Inc., had timely moved to dismiss for lack of personal jurisdiction, the circuit court had denied the motion, and Monster, Inc., had filed a petition for writ of prohibition challenging the circuit court's jurisdiction. This factor tends to favor Monster, Inc.'s request to set aside the default.

### *Meritorious Defenses*

This factor asks us "to determine whether '. . . there is . . . reason to believe that a result different from the one obtained would have followed from a full trial.' " *Groves*, 222 W. Va. at 316, 664 S.E.2d at 538 (quoting *Hinerman v. Levin,* 172 W.Va. 777, 783–84, 310 S.E.2d 843, 850 (1983)). We find that such reason exists. According to Monster, Inc., it is a Pennsylvania corporation that only operates in Pennsylvania and has no contacts with West Virginia. If this is true—and neither we nor the circuit court have made a definitive determination on this question—then it seems highly doubtful that the circuit court has any basis for exercising jurisdiction over Monster, Inc., or imposing judgment. This issue should be resolved at trial—if not beforehand in a fact-finding hearing—and after appropriate discovery.[12] We find that this factor weighs strongly in Monster, Inc.'s favor.

### *Significance of the Interests*

Based on Mr. Duvall's account of his injuries and medical bills, Monster, Inc., is facing potential damages in excess of one million dollars. The award of such a

---

[12] *See* Syl. Pt. 4, in part, *Bell Atlantic*, 201 W. Va. at 404, 497 S.E.2d at 757.

large amount of damages on a default judgment must be seriously and carefully considered. This Court has previously held that damages of a lesser amount were, nonetheless, significant. *Groves*, 222 W. Va. at 316, 664 S.E.2d at 538 ("The default judgment was in the amount of $704,000.00. We consider a judgment in this amount to be significant[.]"). Accordingly, we find that this factor weighs in Monster, Inc.'s favor.

### Degree of Intransigence

We have said that "any evidence of intransigence on the part of a defaulting party should be weighed heavily against him in determining the propriety of a default judgment." *Hinerman*, 172 W. Va. at 782, 310 S.E.2d at 849. There is no disputing that Monster, Inc., was somewhat intransigent in this matter. However, we reject the circuit court's finding of "extreme intransigence." Monster, Inc., has asserted its belief that the circuit court lacks personal jurisdiction in this matter. It also asserts that it was waiting for proper service of the complaint against it. Because of these factors, Monster, Inc., apparently believed it did not have to respond to Mr. Duvall's action by filing an answer. Instead, it could have bided its time and attacked the ultimate judgment when Mr. Duvall attempted to enforce it in Pennsylvania. "A void judgment, being a nullity, may be attacked, collaterally or directly, at any time and in any court whenever any claim or right is asserted under such judgment." Syl. Pt. 5, in part, *State ex rel. Farber v. Mazzone*, 213 W. Va. 661, 584 S.E.2d 517 (2003) (citations and internal quotation marks omitted); *accord Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 407 n.16, 729 S.E.2d 231, 242 n.16 (2012) ("We note . . . that Tudor's failure to take action within the confines

26

of this civil action upon notice of the default is not necessarily an 'intransigent' failure. The United States Supreme Court has held that '[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.' *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 . . . (1982)."). Despite this reality, Monster, Inc., moved swiftly to challenge its default and, despite its default, has pursued its jurisdictional defenses. While we agree Monster, Inc.'s actions may exhibit some degree of intransigence on its part, we do not believe such intransigence is "extreme" or that it outweighs other factors that weigh in favor of Monster, Inc.'s efforts to set aside its default.

### *Reason for Failing to Answer*

Because Monster, Inc., seeks to overturn a default, not a default judgment, Monster, Inc.'s reason for failing to answer need not also qualify as excusable neglect under Rule 60(b) of the West Virginia Rules of Civil Procedure. *See Hardwood Grp. v. Larocco*, 219 W. Va. 56, 62, 631 S.E.2d 614, 620 (2006) (quoting Cleckley, Davis, & Palmer, *Litigation Handbook* § 55(c), at 144 (Cum. Supp. 2005)). Nevertheless, Rule 60(b)[13] may be instructive in terms of reasons that are sufficient to show "good cause" for

---

[13] W. Va. R. Civ. P. 60(b) says that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) *Mistake, inadvertence, surprise, excusable*
>
> (continued . . .)

27

purposes of Rule 55(c).  *See Hardwood Grp.*, 219 W. Va. at 62, 631 S.E.2d at 620 (observing that "a factor under Rule 60(b) can be a consideration").  Rule 60(b) lists six categories of reasons for vacating a final judgment, including "[m]istake, inadvertence, surprise, excusable neglect, or unavoidable cause" and "any other reason justifying relief from the operation of the judgment."  W. Va. R. Civ. P. 60(b).

Though Monster, Inc., does not address this criterion under a separate heading, it explains its failure to answer in terms that suggest "surprise" and "excusable neglect."  Noting Mr. Duvall's attorney's April 17, 2019 representation that the amended complaint would be properly served, Monster, Inc., contends that it "was waiting service, which it never received, and only discovered the [a]mended [c]omplaint was purportedly served upon receipt of the [c]ircuit [c]ourt's [d]efault [o]rder."

As noted above, the factors as outlined herein in relation to the manner of service and the reported lack of knowledge as to who signed for service on behalf of Monster, Inc., are sufficient to constitute "surprise" or "excusable neglect."  Moreover, Monster, Inc., vigorously contests personal jurisdiction in this matter.  Indeed, according

---

*neglect, or unavoidable cause*; (2) *newly discovered evidence* which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) *fraud* (whether heretofore denominated intrinsic or extrinsic), *misrepresentation, or other misconduct of an adverse party*; (4) the *judgment is void*; (5) the *judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated*, or it is *no longer equitable* that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment*.

(Emphasis added.)

28

to Mr. Skolnick's affidavit, the circuit court would seem to have no basis of any kind for exercising jurisdiction. In obedience to the law, the circuit court found that Mr. Duvall has met his very limited obligation to make a prima facie case for personal jurisdiction. However, jurisdiction is a matter of fundamental due process, and we believe that, upon the record in this case, Monster, Inc., deserves a chance to properly contest personal jurisdiction in a pretrial evidentiary hearing or at trial, and that both parties deserve a chance to conduct appropriate discovery on this issue. *See Bell Atlantic*, 201 W. Va. at 404, 497 S.E.2d at 757, syl. pt. 4. Accordingly, this factor also weighs in Monster, Inc.'s favor.

Weighing the five factors discussed above, and for the reasons we have outlined, we believe the scale tips decidedly in favor of Monster, Inc., and its request to set aside its default. We have said that, in the case of default judgments, ""'it is the policy of the law to favor the trial of all cases on their merits." Syl. Pt. 2, *McDaniel v. Romano,* 155 W.Va. 875, 190 S.E.2d 8 (1972).' Syllabus point 6, *Gray v. Mena,* 218 W.Va. 564, 625 S.E.2d 326 (2005)." Syl. Pt. 6, in part, *Lexon Ins. Co. v. Cty. Council of Berkeley Cty.*, 235 W. Va. 47, 770 S.E.2d 547 (2015). This policy applies with even greater force when the question is whether to set aside a default, which is interlocutory and may not be appealed. *See Hardwood Grp.*, 219 W. Va. at 62 n.8, 631 S.E.2d at 620 n.8. Accordingly, we have held that, "[n]otwithstanding the similarities in the standard used in deciding whether to set aside a default and a default judgment, . . . the standard is applied more leniently in the case of a default." *Id*. at 62, 631 S.E.2d at 620 (footnote omitted). In light of these

29

principles, we find that the circuit court committed clear error, as a matter of law, when it refused to vacate Monster, Inc.'s default, and we grant the writ of prohibition requesting that default be set aside as to Monster, Inc.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the circuit court erred by failing to grant Monster, Inc.'s and Monster Franchise's motions to set aside their defaults.[14] Accordingly, we grant the writs of prohibition, vacate the circuit court's orders refusing to set aside these defaults, and remand this case to the circuit court for further actions consistent with this opinion.

Writs granted.

---

[14] For reasons explained above, we agree that the circuit court was without personal jurisdiction to enter a default against Monster Franchise. "This Court has consistently held that default judgments entered upon defective service of process are void." *Farber*, 213 W. Va. at 667, 584 S.E.2d at 523 (citing *Jones,* 66 W.Va. at 301, 66 S.E. at 367, syl. pt. 4). Because of this, we need not inquire further to determine that the circuit court erred when it refused to vacate Monster Franchise's default.